RAWLS, Chief Judge.
Appellant, United Gas Pipeline Co., defendant in the trial court, appeals a final *378 judgment entered pursuant to a jury verdict in favor of appellee-plaintiff Noa in the sum of $260,000.00 and appellee-plain-tiff Richardson in the sum of $350,000.00
Appellees’ respective husbands, while employees of Gulf Power Company, were killed as a result of an explosion of unodorized gas which had leaked from a pipe underneath an office building located on the power company’s premises. The instant suit was lodged by the surviving widows upon the contention that United Gas Pipeline was negligent in furnishing unodorized gas to Gulf Power, or in the alternate that United failed to give warning of the unodorized gas or failed to advise or require Gulf to take adequate steps to odorize the gas. It is appellees’ contention that under statutory provisions, United was, as a matter of law, required to odorize the gas before delivering it to Gulf and that United had a common law duty to warn Gulf and its employees that the gas delivered to Gulf was unodorized.
In the Fall of 1969, United entered into a contract[1] to sell “natural gas in its natural state as it comes from the wells” to Gulf Power Company, a large volume customer.[2] Gulf primarily used the gas for firing boilers in its generating plant. In addition Gulf had installed a two-inch line which ran under an office building, and it was undisputed that the explosion which resulted in the deaths of appellees’ husbands resulted from leaks in this two-inch pipe. There was no knowledge that gas was leaking in Gulf’s office area.
The gas which passed through the two-inch pipe was not odorized, and from a review of the record we are in accord that the gas in the subject pipe should have been odorized. Thus, the compelling issue in this cause is not whether the gas transmitted through the two-inch line should have been odorized, but upon whom was the duty cast to add a warning or stench-ing agent. A secondary question is whether, under this record, the determination of the party upon whom the duty rested to add a stenching agent was a question of fact for the jury or a question of law that should have been resolved by the trial judge.
United’s primary position is that it is solely engaged in the transmission of natural gas to distributing companies such as municipalities and large industrial companies, and that it is undisputed that Florida does not by specific statute require transmission companies to odorize gas.[3] Florida enacted “The Gas Safety Law of 1967” which applies, inter alia, to gas transmission companies vesting in the Florida Public Service Commission and the jurisdiction of legal entities engaged in gas transmission or distribution facilities “with respect to their compliance with the rules and regulations governing safety standards established by the commission pursuant to this law.” [4] Pursuant to the cited law, the Public Service Commission adopted “Gas Transmission and Distribution Piping Systems”, USAS B-31.8-1968. Salient provisions of the subject code are:
“Chapter VI — Miscellaneous
“861 Odorization
“Any gas, distributed to customers through gas mains or service lines or used for domestic purposes in compressor plants, which does not naturally possess a distinctive odor to the extent that its presence in the atmosphere is readily detectable . . . shall have an odorant added to make it so detectable. Odorization is not necessary, however, for such *379 gas as is delivered for further processing or use where the odorant would serve no useful purpose as a warning agent.” [Emphasis supplied.]
“General Provisions and Definitions
“805 Units and Definitions
“805.62 Pipeline or transmission line is a pipe installed for the purpose of transmitting gas from a source or sources of supply to one or more distribution centers or to one or more large volume customers .... In typical cases pipelines differ from gas mains in that they operate at higher pressures, they are longer, and the distance between connections is greater.

“805.64 Gas service line is the piping installed between a main, pipeline and the meter set assembly.”
Appellees rely primarily upon the testimony of a highly qualified expert witness who expressed his opinion as to the meaning of the foregoing cited sections of USAS B-31.8 Code adopted by the Florida Public Service Commission. This witness testified that any gas, irrespective of volume delivered to an ultimate consumer, must be odorized otherwise the seller is liable for failure to odorize. The expert reasoned that the spurline which furnished as much as 100 million feet of gas to the meter was a service line within the meaning of subsection 805.64 and it was the mandatory duty, pursuant to subsection 805.64 of the cited code, of United to odorize the gas so furnished to Gulf and instruct Gulf as to safety measures to insure that Gulf would properly handle this dangerous substance.
United urges that the trial court erred in permitting appellees’ expert witness to testify as to his construction of USAS B-31.8-1968, as this constituted an interpretation of the laws of this State which is a matter solely vested in the trial judge. We agree.
Subsection 805.62 specificálly defines a pipeline or transmission line as a pipe installed for the purpose of transmitting gas from sources of supply to one or more distribution centers or to one or more large volume customers. The evidence adduced by appellees clearly proved that United was a pipeline company; that Gulf was a large volume customer; and that the gas transmitted by United to Gulf’s meter traveled in large high pressure lines. Gulf contracted with United for gas in its natural state and Gulf had used as much as 100 million feet of gas per day. To hold that the 1967 Florida legislature in enacting The Gas Safety Law and pursuant to that law the Florida Public Service Commission adopting an industrial code promulgated in 1968, coupled with one witness’s opinion that the definition of a service line applies to the instant high pressure transmission line was sufficient to place a statutory duty upon United to odorize the gas it furnished to its large volume customer, would in our view constitute judicial legislation. If the Florida legislature feels that the public’s health and safety require such an enactment as appellees contend, it must do so with clarty.
 This Court held in Zunck v. Gulf Oil Corporation[5] that in the absence of a statute, the manufacturer or wholesale distributor did not have a nondelegable duty to odorize gas. We now hold that a pipeline company transmitting and selling by contract unodorized natural gas to a large volume customer does not have a nondele-gable duty to odorize the gas. Here, Gulf was daily receiving a tremendous quantity of unodorized natural gas from United. Gulf, not United, undertook to siphon a miniscule amount of the gas delivered into the small, two-inch line on its premises. Gulf knew that the gas was not odorized. Under the facts of this case, Gulf had the *380 sole duty to safely handle the volatile gas after taking delivery of that which it had purchased.
The trial judge erred in denying appellant-defendant’s motion for a directed verdict.
The judgment appealed is reversed.
WIGGINTON and CARROLL, DONALD K., JJ., concur.

. This was the second contract between United and Gulf; the first contract between these two parties was entered into in the 1950’s.

. Gulf Power consumed as much as 100 million feet of gas per day which is twice as much as the City of Pensacola.

. Seven Northeastern States and California, all heavily populated areas, are the only states that require the odorization of gas by transmission companies.

. Chapter 368, Florida Statutes.

. Zunck v. Gulf Oil Corporation, 224 So.2d 386 (1 Fla.App.1969).