305 So.2d 182 (1974)
Mary E. NOA, Petitioner,
v.
UNITED GAS PIPELINE COMPANY, a Corporation, Respondent.
Mary Christine RICHARDSON, Petitioner,
v.
UNITED GAS PIPELINE COMPANY, a Corporation, Respondent.
No. 44441.
Supreme Court of Florida.
November 7, 1974.
Rehearing Denied January 24, 1975.
*183 Robert Orseck of Podhurst, Orseck & Parks, Miami, and Lefferts L. Mabie, Jr., of Levin, Warfield, Graff, Mabie & Rosenbloum, Pensacola, for petitioners.
Patrick G. Emmanuel and Lawrence W. Oberhausen of Holsberry, Emmanuel, Sheppard, Mitchell & Condon, Pensacola, for respondent.
ERVIN, Justice.
We review by conflict certiorari the decision of the District Court of Appeal, First District, in the cases of United Gas Company v. Mary E. Noa and United Gas Company v. Mary Christine Richardson, reported at 281 So.2d 377.
Supplementing the statement of facts and issues set forth in the District Court of Appeal opinion, we note:
Petitioners brought this action for damages as surviving widows. Petitioners' decedents, employees of Gulf Power Company, died while working in an office building under which a gas pipeline leaked unodorized gas, causing an explosion. In the fall of 1969 Respondent entered into a contract to sell "natural gas in its natural state as it comes from the wells" to Gulf Power Company, a large volume customer. Gulf Power primarily used the gas for firing boilers in its generating plant.
Gulf Power had installed a two-inch line which ran under the office building and the explosion which caused the deaths of Petitioners' husbands resulted from leaks in this two-inch pipe. The gas which passed through the two-inch pipe was not odorized even though the Public Service Commission (pursuant to Ch. 368, F.S.) adopted "Gas Transmission and Distribution Piping Systems," USAS B-31.8  1968, a regulation which provides in part:
"Chapter VI  Miscellaneous
"861 Odorization
"Any gas, distributed to customers through gas mains or service lines or *184 used for domestic purposes in compressor plants, which does not naturally possess a distinctive odor to the extent that its presence in the atmosphere is readily detectable ... shall have an odorant added to make it so detectable. Odorization is not necessary, however, for such gas as is delivered for further processing or use where the odorant would serve no useful purpose as a warning agent. (Emphasis supplied.)
"General Provisions and Definitions
"805 Units and Definitions
"805.62 Pipeline or transmission line is a pipe installed for the purpose of transmitting gas from a source or sources of supply to one or more distribution centers or to one or more large volume customers ... . In typical cases pipelines differ from gas mains in that they operate at higher pressures, they are longer, and the distance between connections is greater." (Emphasis supplied.)
* * * * * *
"805.64 Gas service line is the piping installed between a main, pipeline ... and the meter set assembly."
As stated by the District Court, an expert witness for Petitioners (plaintiffs) at the trial expressed the following opinion concerning the meaning of these safety regulations:
"... This witness testified that any gas, irrespective of volume delivered to an ultimate consumer, must be odorized otherwise the seller is liable for failure to odorize. The expert reasoned that the spurline which furnished as much as 100 million feet of gas to the meter was a service line within the meaning of subsection 805.64 and it was the mandatory duty, pursuant to subsection 805.64 of the cited code, of United to odorize the gas so furnished to Gulf and instruct Gulf as to safety measures to insure that Gulf would properly handle this dangerous substance." 281 So.2d at 379. (Emphasis supplied.)
A jury verdict ensued and a judgment for Petitioners was entered on the verdict. On appeal the District Court of Appeal reversed, holding that the trial court erred in permitting Petitioners' expert witness to testify as to his application of the rules, because this invaded the court's function; furthermore, the District Court held that a pipeline company transmitting and selling unodorized gas to a large-volume customer does not have a nondelegable duty to odorize the gas.
The crucial question in this certiorari review therefore is:
Did the District Court err in holding that expert testimony was inadmissible regarding the interpretation of a regulatory definition?
We conclude the District Court committed conflict of decision jurisdictional error for the reasons hereinafter explained.
Petitioners argue that Chimeno v. Fountainbleu Hotel Corp. (Fla.App. 1971), 251 So.2d 351, controls this issue, contrary to the District Court opinion below, because that case held that expert testimony may be adduced to show the presence or absence of the elements which call a regulatory ordinance's application into play. Petitioners assert that under the instant facts the applicability of the safety regulations requiring odorization of gas delivered to an ultimate customer through a meter set assembly was a question of fact for the jury. Furthermore, Petitioners submit that considering the conflicting testimony, the question of whether the gas distributed to Gulf in the service line by United should have been odorized by the latter was a question of fact for the jury and that expert testimony on this subject was necessarily proper, citing LeMay v. Garcia (Fla.App. 1964), 164 So.2d 565, and Grove v. Sanford Mobile Park, Inc. (Fla.App. 1968), 212 So.2d 34, inter alia.
*185 Additional conflict is urged with the following cases: Zunck v. Gulf Oil Corp. (Fla.App. 1969), 224 So.2d 386 (does a gas company supplying gas to a private company have a duty to odorize?); Camp v. Gulf Counties Gas Co. (Fla.App. 1972), 265 So.2d 730, cert. den. Fla., 284 So.2d 691 (expert testimony on reasonable care sufficed to create a jury question), and Zeller v. Peoples Gas System, Inc. (Fla.App. 1972), 258 So.2d 835 (whether a gas company has odorized gas as required is a question of fact). Finally, Petitioners contend that when all conflicts are resolved and when all permissible inferences are drawn in their favor, a jury question was at least presented on Respondent's causative negligence, especially since gas distribution involves a high degree of care.
Respondent United replies that Petitioners' reliance on Chimeno, supra, is misplaced and is distinguished by the fact the issue there was the character of the device as it was classified and defined within the industry, whereas the issue in this case is the classification of the device as defined in plain language by the Legislature and the Public Service Commission. Instead, Respondent asserts that the controlling law is found in Consolidated Mutual Insurance Co. v. Ramy (Fla.App. 1970), 238 So.2d 431, cert. den. 240 So.2d 641, holding that testimony of expert witnesses is generally confined to matters of fact rather than matters of law (such as a definition of a statutory term). Respondent goes on to factually distinguish the LeMay case, supra, relying instead on Cash v. Gates (Fla.App. 1963), 151 So.2d 838, which established the rule that the court has the sole prerogative to make the legal determination of the application of an ordinance, rule, or regulation. Respondent maintains that Camp, Zeller, and Zunck, supra, actually support the District Court's opinion and do not impose a common law duty under the present facts.
Finally, the Respondent argues that the District Court properly construed the record on appeal in determining that no legal duty was imposed on it to odorize the natural gas. Respondent concludes by asserting that the facts in this case clearly prove that there was no duty running from Respondent to decedents; that Respondent did not fail to perform any duty owed decedents, and that the injury or damage to decedents arose because of a breach or default on the part of Gulf Power in failing to properly inspect and maintain its gas lines.
It is our conclusion that the District Court's decision erroneously conflicted with the aforecited decisions relied on by Petitioners. The legal basis for expert testimony in this case was to aid the jury in determining factually whether the spurline leading from the main pipeline of United was a service line for distribution of a large volume of gas to Gulf, a customer, within the contemplation of the definitions of items 805.62 and 805.64 of the regulations prescribed by the Florida Public Service Commission under the "Gas Safety Law of 1967" (F.S. 368). And if so upon whom did the responsibility devolve to see to it that gas passing from United to Gulf through the service line was odorized as required by the regulation. The jury factually found the duty to odorize devolved upon United.
These were factual questions which a "highly qualified" expert engineer in gas line distribution technology could properly testify about. They were not readily answerable by the trial judge referring to the cold language of the regulations. The trial judge could properly allow an expert's testimony to elucidate a clearer understanding of the safety regulations and their practical application for the benefit of the jury in resolving this factual issue of the case.
The issue was the practical applicability of the regulations to the gas line that exploded. If it were a service line to a customer, then odorization was required; if it was not a service line, then odorization was not required. There was conflicting expert testimony as to whether this was a *186 service line leading to a meter set assembly. The District Court opinion below, on its face, shows that indeed a meter was involved and the District Court referred to the measuring device to which the line led as a "meter." At most, as a matter of law, the regulation for odorization of gas fed through a service line was violated; at the very least, the expert testimony of the Petitioners created a question of fact.
Chimeno squarely holds that expert testimony may be adduced to show presence or absence of the elements which call a regulation into play. A service line is given a definition under the regulations here. But whether or not the pipeline here serviced a customer through a "meter set assembly" could be answered only by experts. A jury  nor a judge for that matter  could not be expected to know whether a certain device was or was not a meter set assembly. And here, the record squarely shows that the employer of the deceaseds was not a distributor, but was an ultimate customer. Therefore, the applicability of the regulations requiring odorization of gas, delivered to an ultimate customer, through a meter set assembly, at least was a question of fact for the jury.
As in Chimeno, the issue was the "character" (Fla.App. 251 So.2d at 354) of the device involved. In Chimeno, the issue was the "character of this elevator, as to whether it came within the exception in the ordinance" (Fla.App. 251 So.2d at 354).
Here, by contrast, the sole issue was the "character" of the pipeline involved, and as to whether it came within any exception to the regulation or fell within its ambit (Fla.App. 251 So.2d at 354).
The Third District Court in Chimeno held that on conflicting, expert testimony the trial court properly allowed the ordinance in evidence. Here, the First District Court held, in direct conflict with Chimeno, that expert testimony was not allowable to determine the presence or absence of the elements and requirements necessary to activate the regulation. We agree with the rationale of Chimeno and consider it applicable to the instant cases.
A jury question was presented on the basis of conflicting expert testimony as to the applicability of the regulations of the Public Service Commission requiring odorization of gas by a gas company which supplies gas to an ultimate customer through a service line. Common sense, and conflict jurisdiction walk hand in hand in this case; it is clear from the record proper that at the very least, a jury question was presented on applicability of the regulation. The face of the opinion itself reflects that gas was delivered to a customer which used the gas primarily for firing boilers in its generating plant. The record proper also shows the gas was supplied to a meter. Regulation 805.64 was applicable and the odorization requirements of 861 at least present a jury question as to whether United was responsible. And the holding that no such jury question was presented in the opinion, clearly conflicts with Chimeno, supra; and other cases.
The District Court substituted its factual judgment for that of the jury in this case. It had no duty as a jury to find as a matter of law that it was Gulf's duty to odorize the gas in the spurline rather than for United to do it. It was a disputed factual question requiring the jury to resolve conflicting evidence which the District Court should have left alone.
The decision of the District Court is quashed with direction to reinstate the judgment of the trial court.
It is so ordered.
ADKINS, C.J., and BOYD, McCAIN and OVERTON, JJ., concur.
ROBERTS, J., dissents.