312 So.2d 771 (1975)
KRISPY KREME DOUGHNUT COMPANY, Appellant,
v.
Roy CORNETT, Appellee.
No. U-233.
District Court of Appeal of Florida, First District.
May 9, 1975.
Rehearing Denied June 10, 1975.
James W. Smith, Hoffman, Hendry, Parker & Smith, Daytona, Beach, for appellant.
Richard D. Bertone, and Maurice Wagner, Daytona Beach, for appellee.
McCORD, Judge.
This is an appeal from final judgment, denial of appellant's motion for a new trial and denial of appellant's motion for directed verdict.
On March 19, 1972, Ricky McVay (driver) and several friends were returning by automobile from Daytona Beach to their home in Winter Garden. On the way, they decided to stop at appellant's Krispy Kreme Doughnut Shop located in the City of Daytona Beach. Previously, on the way to Daytona Beach, they had trouble with *772 the brakes of the automobile. As they approached the doughnut shop, McVay began pumping the brakes and slowed the car down to a speed of four or five miles per hour as it entered the parking area of the doughnut shop but it would not stop. The vehicle ran over a 2 1/2 inch curbing or wheel guard at the edge of a sidewalk approximately three feet wide which extended along the front of the shop. The car then crossed the sidewalk and ran into and partially through the wall and plate glass window comprising the front portion of the shop. At the time of the impact, appellee Roy Cornett was sitting on a stool at the counter in the shop with his back to the point of impact. He was struck by debris and knocked to the floor amidst a pile of bricks and glass sustaining injuries.
The Krispy Kreme Doughnut Shop consists of a building, a parking area and a sign. The parking area or lot is a ground-level area which vehicles enter immediately upon leaving the street. It has marked perpendicular parking spaces along the front of the building. The shop was constructed according to company specifications which are modified for different localities to meet each municipality's building codes and ordinances. In order to receive a certificate of occupancy in the City of Daytona Beach, the city's inspectors must certify that the building meets or exceeds all city ordinances and regulations pertaining to the particular type of structure. Such certification was made in this case.
During trial, at the close of plaintiff's (appellee's) case, plaintiff voluntarily dismissed defendants McVay, driver of car, and Donald Eagles, owner of the car, leaving appellant as the sole remaining defendant.
This case is governed by the law as set forth by this court in Schatz v. 7-Eleven, Inc., Fla.App. (1st), 128 So.2d 901, unless appellee is correct in its contention that appellant failed to comply with the building code of the City of Daytona Beach in the construction of its parking area. The facts in Schatz are remarkably similar to those in the case sub judice. There Schatz, a business invitee shopping in 7-Eleven Drive-in Food Store, was struck by an automobile which ran through the front of the store from a parking slot perpendicular to the front of the building. The suit was brought by Schatz against 7-Eleven, Inc., to recover for her injuries. As in the case sub judice, the 7-Eleven Drive-in Food Store was located in Daytona Beach, but the municipal building code was not injected in that suit. This court's opinion specifically mentioned that the court was unaware of any ordinance, statute, or rule of law requiring that the owner of the store erect a barrier between the entrance to his establishment and the street, highway, or parking area, sufficient in height and strength to prevent motor vehicles negligently operated by others from entering the store where customers are usually present. In affirmance, a summary judgment for defendant 7-Eleven, Inc., Judge John Wigginton writing for the court, said:
"Plaintiff was a business invitee on defendant's premises at the time of her injury. The law imposes on defendant the duty of exercising ordinary care to maintain his premises in a reasonably safe condition for the purpose for which they are adapted. Defendant did not owe plaintiff a duty as insurer of her safety while on the premises in question, but is charged with the duty of guarding against subjecting plaintiff to dangers of which defendant is cognizant or might reasonably foresee.
In the Pope case this court discussed the law of proximate cause and the several tests to be applied in determining whether a given act is the proximate cause of damages sustained. It was there pointed out that the two essential elements of proximate cause are causation and the limitation to foreseeable consequence. Causation is that act which, in the natural and continuous sequence, unbroken *773 by any intervening cause, produces the injury, and without which the result would not have occurred. Even though the person charged may be guilty of a negligent act, there can be no recovery for an injury resulting therefrom which was not a reasonable foreseeable consequence of his negligence. For the consequence of a negligent act to be foreseeable, it must be such that a person by prudent human foresight can anticipate will likely result from the act, because it happens so frequently from the commission of such an act that in the field of human experience it may be expected to happen again."
Daytona Beach Municipal Ordinance 67-79, § 507, commonly known as the Southern Standard Building Code, was admitted in evidence by the trial judge subject to further testimony being offered "to tie in any particular section." § 507 states as follows:
"507.1  Parking Lots
"Open sheds or canopies may be erected up to two-thirds (2/3) the area of a lot, provided such construction is not less than required for Type IV  Non-Combustible Construction, and that all such construction meets the approval of the Building Official.
507.2  Public Parking Decks
(a) As defined in Section 201.2, Public Parking Decks may be constructed of Types I, II, III, and IV Construction without exterior walls. When such structures are within six (6) feet of common property lines they shall be provided with an enclosure wall along the common property line of not less than two (2) hours fire resistance without openings therein, except that doors opening to buildings adjacent thereto may be permitted provided that such door openings meet the requirements of Section 703.4.
(b) Type III structures shall be limited to a height of four (4) stories and an area limitation of 30,000 square feet per floor with roof parking permitted. Type IV structures shall be limited to a height of eight (8) stores and an area limitation of 30,000 square feet per floor with roof parking permitted. When of Type I  Fireproof or Type II  Fire-Resistive Construction, the height and area shall not be limited. When of Type III or Type IV Construction area increases may be allowed in accordance with Section 403.
(c) Each floor of such structure shall have a continuous wheel guard not less than six (6) inches in height above the floor, with a clear passage of four (4) feet between the wheel guard and edge of structure. In such structures without exterior walls there shall be placed in addition to the wheel guard a continuous protective railing not less than three (3) feet six (6) inches above the floor around the entire outside perimeter of the structure."
Expert testimony was allowed on the question of whether or not § 507.2 entitled "Public Parking Decks" was applicable to appellant's parking area. The building inspector of the City of Daytona Beach testified it was not applicable and that appellant's building and parking lot met all the requirements of the existing building code. Appellee presented contradictory testimony of a Volusia County building inspector who testified that the County of Volusia has adopted the same building code and that § 507.2(c) applies to the Krispy Kreme parking area.
Whether or not a municipal ordinance is applicable to the facts of a particular case and should thus be admitted in evidence is a question of law for the court. Where its applicability, or lack thereof, is dependent upon disputed factual issues, the factual issues are, of course, a question for the jury and the jury will, under proper instructions from the court, apply or not apply the ordinance depending upon its finding as to the facts. In this regard, appellee *774 points to the recent opinion of the Supreme Court in Noa v. United Gas Pipeline Company, Fla., 305 So.2d 182, apparently as supportive of appellee's position that the trial court correctly submitted the ordinance to the jury with expert testimony as to its applicability and left the question of its applicability to the jury for its determination. As we view the Supreme Court ruling in Noa, however, that court merely held that the trial court may permit expert testimony to aid in the interpretation of an administrative rule that is so technical in nature that the judge and jury cannot understand it without expert technical assistance. There, the Supreme Court said:
"... The legal basis for expert testimony in this case was to aid the jury in determining factually whether the spurline leading from the main pipeline of United was a service line for distribution of a large volume of gas to Gulf, a customer, within the contemplation of the definitions of items 805.62 and 805.64 of the regulations prescribed by the Florida Public Service Commission under the `Gas Safety Law of 1967' (F.S. 368). And if so upon whom did the responsibility devolve to see to it that gas passing from United to Gulf through the service line was odorized as required by the regulation. The jury factually found the duty to odorize devolved upon United.
These were factual questions which a `highly qualified' expert engineer in gas line distribution technology could properly testify about. They were not readily answerable by the trial judge referring to the cold language of the regulations. The trial judge could properly allow an expert's testimony to elucidate a clearer understanding of the safety regulations and their practical application for the benefit of the jury in resolving this factual issue of the case."
The Supreme Court in Noa went on to refer to the opinion of our sister court of the Third District in Chimeno v. Fountainbleu Hotel Corp., Fla.App. (3d), 251 So.2d 351, and said:
"Chimeno squarely holds that expert testimony may be adduced to show presence or absence of the elements which call a regulation into play. A service line is given a definition under the regulations here. But whether or not the pipeline here serviced a customer through a `meter set assembly' could be answered only by experts. A jury  nor a judge for that matter  could not be expected to know whether a certain device was or was not a meter set assembly."
Thus, we see that in Noa the Supreme Court considered expert testimony pertinent and helpful because of the highly technical nature of the Public Service Commission rule and facts. In the case sub judice, such is not the situation. From a casual reading of § 507.2, it is apparent and obvious that appellant's parking area around its doughnut shop is not a "public parking deck" as that term is applied in Paragraphs (a), (b) and (c). Throughout those paragraphs, public parking decks are referred to as structures. Paragraph (c), which the county building inspector testified was the applicable regulation for appellant's parking area, refers to "each floor of such structure" and states that "in such structures without exterior walls, there shall be placed in addition to the wheel guard a continuous protective railing not less than three feet six inches above the floor around the entire outside perimeter of the structure." It is apparent that § 507.2 applies only to parking buildings of multiple decks. This is even more apparent when we note that § 507.1 is the section pertaining to parking lots. There the only requirement relating to parking lots pertains to the erection or construction of open shed or canopies on the lot. The City of Daytona Beach construed its ordinance (§ 507.2) as not applicable to appellant's parking lot both at the time it was built and at the time of this trial. Appellant's parking area is clearly a "parking lot" and *775 not a "public parking deck." The municipal ordinance relating to "public parking decks" is not applicable to the facts of this case and it was error to admit it into evidence. Based upon the previous ruling of this court in Schatz v. 7-Eleven, Inc., supra, appellant's motion for directed verdict should have been granted.
Reversed and remanded with directions to enter judgment for appellant.
RAWLS, C.J., and JOHNSON, J., concur.