405 So.2d 732 (1981)
GREAT AMERICAN INSURANCE COMPANY, Appellant,
v.
Lauren COPPEDGE and Hasam Realty Corp., Etc., et al., Appellees.
HASAM REALTY CORP. D/B/a Diplomat Resort and Country Clubs, Appellants,
v.
Lauren COPPEDGE and Great American Insurance Company, Appellees.
Nos. 80-1487, 80-1544.
District Court of Appeal of Florida, Fourth District.
September 23, 1981.
Rehearings Denied December 2, 1981.
*733 Nancy Little Hoffmann of Nancy Little Hoffmann, P.A., and Pomeroy, Betts & Pomeroy, Fort Lauderdale, for Great American Ins. Co.
Arnold R. Ginsberg of Horton, Perse & Ginsberg, Miami, and Rubin & Rubinchik, P.A., Hollywood, for Hasam Realty Corp.
William C. Crenshaw of Mahoney, Hadlow & Adams, P.A., Miami, for appellee-Lauren Coppedge.
HERSEY, Judge.
These are appeals by an innkeeper (Appeal #80-1544) and its insurer (Appeal #80-1487) from determinations in the trial court that the innkeeper is liable to its guest for loss of certain items of jewelry and that the loss is covered by insurance. The applicability of the Florida Innkeeper's Statute, Section 509.111, Florida Statutes (1979), is called into question.
Lauren Coppedge, while a guest at the Diplomat Hotel, hid her jewelry box behind two phone books on a night stand in her hotel room. She later checked out without retrieving her valuables. The box was discovered by a maid who turned it over to the housekeeping department. The latter, in turn, delivered it to the director of hotel security, Victor Graziano. The evidence is conflicting as to whether Graziano took possession immediately prior to or shortly after being advised that his employment was being terminated. In any event he could not recall what he did with the jewelry box and it was never returned to Coppedge.
Coppedge filed a complaint against the hotel on the alternative theories of bailment, negligence and conversion.
*734 Appellant, Hasam Realty Corp., owner of the hotel, defended on the basis that its liability, if any, was in any event limited by the Florida Innkeeper's Statute. It, in turn, filed a third-party complaint against Great American Insurance Company seeking indemnification based upon a so-called "3-D" policy (dishonesty, disappearance and destruction) in the event the hotel was required to respond in damages for the loss.
Appellant, Great American, defended on the basis that it could not be shown that Graziano entertained the intent to commit a fraudulent or dishonest act, a prerequisite to coverage for the loss in question.
The court read to the jury the entire Florida Innkeeper's Statute, thus placing the burden on the jury to determine whether the statute, or a portion of it, applied, on the facts of this case.
The jury found that the acts of the hotel were the sole legal cause of the loss and awarded damages of $14,800 to Coppedge. The jury further found in favor of the hotel against its insurer.
The first issue presented for our determination is whether or not the trial court erred in refusing to direct a verdict to the effect that liability was limited by the Florida Innkeeper's Statute. That statute, Section 509.111 Florida Statutes (1979), provides:
(1) The operator of a public lodging establishment is under no obligation to accept for safekeeping any moneys, securities, jewelry, or precious stones of any kind belonging to any guest, and, if such are accepted for safekeeping, he shall not be liable for the loss thereof unless such loss was the proximate result of fault or negligence of the operator. However, the liability of the operator shall be limited to $1,000 for such loss, if the public lodging establishment gave a receipt for the property (stating the value) on a form which stated, in type large enough to be clearly noticeable, that the public lodging establishment was not liable for any loss exceeding $1,000 and was only liable for that amount if the loss was the proximate result of fault or negligence of the operator.
(2) The operator of a public lodging establishment shall not be liable or responsible to any guest for the loss of wearing apparel, goods or other property, except as provided in subsection (1), unless such loss occurred as the proximate result of fault or negligence of such operator, and, in case of fault or negligence, he shall not be liable for a greater sum than $500, unless the guest, prior to the loss or damage, files with the operator an inventory of his effects and the value thereof and the operator is given the opportunity to inspect such effects and check them against such inventory. The operator of a public lodging establishment shall not be liable or responsible to any guest for the loss of effects listed in such inventory in a total amount exceeding $1,000.
We first consider appellee's contention that the statute is totally inapplicable because Coppedge was no longer a "guest" when the loss occurred. For this proposition Coppedge relies upon O'Brien v. Vaill, 22 Fla. 627, 1 So. 137 (1886). In that case, a guest, after settling his bill, departed from the hotel, leaving his baggage behind, requesting an employee of the hotel to keep it until his return. The court determined that the extraordinary liability imposed on an innkeeper by the law in effect at that time for protection of a guests' baggage did not apply when the hotel-guest relationship had ceased to exist. The court reasoned that the imposition of extraordinary liability upon the innkeeper was based on the profit he received from entertaining his guest; thus, when a traveler ceased to be a guest and the innkeeper ceased to derive a profit from his entertainment, the extraordinary liability ceased. Coppedge contends that this principle is relevant to the instant case in that, when the hotel-guest relationship ceases, so too does the limitation of liability. Such an application would produce the incongruous result that a hotel would have limited liability to a paying guest but unlimited liability to a guest who has terminated the relationship. We are therefore *735 not at all persuaded that the rule in Vaill, lessening the exposure to liability of an innkeeper for the safekeeping of the belongings of his departed former guest, should be applied in the context of this case to increase the exposure to liability for such activity.
Having determined, then, that the statute applies, we turn next to a consideration of the manner in which it should be applied in this case.
Under subsection (1) of this statute the hotel must follow certain procedures in order to limit its liability for losses of moneys, securities, jewelry, or precious stones which it accepts for safekeeping. Thus, if a hotel accepts property for safekeeping but does not follow the procedures outlined in the statute, it cannot claim the benefit of a limitation of liability. Garner v. Margery Lane, Inc., 242 So.2d 776 (Fla.4th DCA 1970).
Coppedge claims that the hotel accepted her jewelry for safekeeping by taking it into custody. Therefore, according to Coppedge, the hotel, in order to limit its liability, was required to give her a receipt for the property. She concludes that since there was no evidence that a receipt was given, the hotel cannot claim the benefit of the limitation of liability. However, the statute also requires that the receipt for the property state its value. Obviously, this value must be ascertained from the owner. We interpret this portion of the statute as contemplating a tender of the property for safekeeping by the guest before there can be an acceptance by the hotel. Here there was no such tender by Mrs. Coppedge. In fact she made an informed and specific decision to forego the use of the hotel's safety deposit boxes (safekeeping facilities).
Subsection (2) of 509.111 places the burden of complying with enumerated procedures on the guest in order to avoid a strict limitation of liability for the loss of items which have not been accepted by a hotel for safekeeping. Coppedge challenges the applicability of subsection (2) in this case because it covers "loss of wearing apparel, goods or other property, except as provided in subsection (1)... ." Subsection (1) refers to "money, securities, jewelry or precious stones." Thus, argues Coppedge, subsection (2) is not applicable to any of the items listed in subsection (1). However, the "except for" language of subsection (2) refers more logically to the liability of the hotel rather than to the nature of the property.
Under our interpretation, a hotel's liability for a guest's loss of property is limited to $500 unless the hotel accepts property for safekeeping pursuant to subsection (1) or the guest, in accordance with subsection (2) provides an inventory of effects not tendered and accepted pursuant to subsection (1). In either event, if the proper procedures are followed, the hotel's liability is limited to $1,000.
Coppedge complains that to interpret subsection (2) as including jewelry would allow a hotel to circumvent the provisions of subsection (1). However, the statute clearly sanctions such an eventuality by providing that a hotel is under no obligation to accept the specified items for safekeeping.
Our conclusion is that if the hotel is liable for the loss its liability is limited by subsection (2) of Section 509.111, Florida Statutes (1979).
A hotel is liable for loss of a guest's property only when the loss is a proximate result of fault or negligence of the hotel. § 509.111, Fla. Stat. (1979). Accordingly, the trial court correctly determined that a jury question was presented on that issue. However, the issue of proximate cause is separate from the question of the applicability of the statutory limitation of liability. If the loss is not the proximate result of the hotel's fault or negligence, then there is no liability and obviously a limitation of liability is inapplicable. Only if the hotel's fault or negligence is the proximate cause of the loss, do the Section 509.111 limitations on liability become operative.
There were no issues of fact as to the applicability of Section 509.111 in the instant case. It was not disputed that the *736 hotel did not comply with subsection (1) procedures nor was it disputed that Coppedge failed to follow subsection (2) procedures. Therefore, the question of applying the limitations of liability was a legal one for the trial court to determine. Krispy Kreme Doughnut Co. v. Cornett, 312 So.2d 771 (Fla. 1st DCA 1975), cert. denied 330 So.2d 16 (Fla. 1976). We have determined that those limitations should have been applied here and since the statute limits liability to an amount less than that required for circuit court jurisdiction, the circuit court should have transferred the case to the county court.
The basis for Great American's position on appeal is that in order for there to be liability on a fidelity bond insuring an employer for losses resulting from an employee's fraudulent or dishonest act, the employee's conduct must amount to more than negligence, mistake, carelessness, or incompetence. To constitute fraudulent or dishonest conduct, the employee must have some degree of intent to perform the wrongful act. Wilfulness and an intent to deceive are essential elements of "dishonest or fraudulent" acts. Eglin National Bank v. Home Indemnity Co., 583 F.2d 1281 (5th Cir.1978).
Intent, being a state of mind, is not subject to direct proof and can only be inferred from the circumstances. Skold v. State, 263 So.2d 627 (Fla.3d DCA 1972). Thus, if there was any reasonable evidence upon which a jury could legally predicate a determination of intent, the trial court correctly denied the appellant's motion for directed verdict. Tiny's Liquors, Inc. v. Davis, 353 So.2d 168 (Fla.3d DCA 1977). In testing a motion for directed verdict, the movant admits all of the facts shown in the evidence and admits to every reasonable inference favorable to the adverse party. Lupoletti v. Miller, 269 So.2d 67 (Fla.4th DCA 1972). We hold that the evidence was sufficient, on the record, to raise a jury question on the issue of intent. Contrary to the insurer's contention, the jury did not have to pyramid inference upon inference to conclude that the employee (Graziano) had the requisite intent. Rather, the circumstances established by the evidence were susceptible of a reasonable inference which would authorize recovery (the existence of intent) and were also capable of an equally reasonable contrary inference (no intent). Accordingly, a jury question was presented. Voelker v. Combined Ins. Co. of America, 73 So.2d 403 (Fla. 1954).
We therefore reverse the final judgment and remand this cause with instructions to transfer the case to the County Court for further proceedings consistent with our opinion. Because the jurisdictional threshold amount of damages for circuit court jurisdiction is not reached here it will be necessary to conduct a new trial.
REVERSED AND REMANDED WITH INSTRUCTIONS.
DOWNEY and MOORE, JJ., concur.