742 So.2d 18 (1999)
Larry Ray PARISH, et al., Plaintiffs-Appellants,
v.
L.M. DAIGLE OIL COMPANY, INC., et al. Defendant-Appellee.
No. 98-1716.
Court of Appeal of Louisiana, Third Circuit.
June 23, 1999.
Rehearing Denied August 11, 1999.
*19 Steven Broussard, Lake Charles, for Larry Ray Parish, Indiv., et al.
Steven Bernard Rabalais, Lafayette, for L.M. Daigle Oil Co., Inc. d/b/a Delta Fuel Stop.
Michael J. Juneau, Thomas R. Juneau, Lafayette, for Southern Co. of North Little Rock, Inc.
BEFORE THIBODEAUX, COOKS, DECUIR, PETERS and AMY, Judges.
COOKS, Judge.
Larry Parish, individually and on behalf of his minor daughter Felisha Parish, filed suit against L.M. Daigle Oil Company, Inc., d/b/a Delta Fuel Stop and its insurer, Ranger Insurance Company (collectively Delta Fuel) seeking damages for injuries sustained when she was pinned against a convenience restroom door, while exiting the patrons' restroom, by a car which jumped the curb. The trial court granted summary judgment in favor of Delta Fuel. We reverse.

BACKGROUND FACTS AND PROCEDURAL HISTORY
Felisha Parish and two friends, Roslyn Zeno and Shelly Anderson spent the evening of April 25, 1995, driving around town. The three stopped at Delta Fuel so that Parish could use the restroom. The car was parked parallel to the store, facing the back with its passenger side doors facing the front of the raised sidewalk/curb entrance to the restrooms. While Parish was in the restroom, Zeno an unlicensed driver, decided to turn the car around to place it in a more convenient position for exiting the store lot. As Parish opened the exit door of the restroom, Zeno mashed the accelerator, instead of the brake, causing the vehicle to accelerate forward over the curb trapping Parish between the bumper of the car and the restroom. Parish sustained severe injuries to her legs, especially the left which required partial amputation.
Parish filed suit against Delta Fuel claiming the access area to the restrooms was unreasonably dangerous because it afforded no protection from automobiles to persons either entering or exiting. Delta Fuel filed a motion for summary judgment alleging it owed no legal duty to protect its patrons from the particular risk of harm encountered by Parish. The trial court granted summary judgment finding, as a matter of law, the store owed no duty to protect Parish under the circumstances. Parish filed a motion for new trial which was denied. This appeal now follows.

ASSIGNMENT OF ERROR
Parish maintains the trial court erred in finding Delta Fuel owed no duty to protect her from the particular activity which resulted in her injuries; and, accordingly she urges Delta Fuel was not entitled to a judgment in its favor summarily dismissing her suit.

LAW AND ANALYSIS

Standard of Review
As a general principle, "[a]ppellate courts review summary judgments de novo, under the same criteria which govern the district court's consideration of the appropriateness of summary judgment." Potter v. First Federal Savings & Loan *20 Ass'n of Scotlandville, 615 So.2d 318, 325 (La.1993), citing Schroeder v. Board of Sup'rs of Louisiana State University, 591 So.2d 342, 345 (La.1991).
Duty is a question of law. Brock v. Winn Dixie of Louisiana, Inc., 617 So.2d 1234 (La.App. 3 Cir.1993); Harris v. Pizza Hut of Louisiana, Inc., 455 So.2d 1364 (La.1984). The duty issue may be appropriate for resolution by summary judgment. La.Code Civ.P. art. 966(B). However, summary judgment is proper, in such instances, only when it is clear no duty exists as a matter of law; and, the facts or credibility of the witnesses are not in dispute. Self v. Walker Oldsmobile Company, Inc., 614 So.2d 1371, (La.App. 3 Cir.1993), citing Coates v. Nettles, 563 So.2d 1257 (La.App. 1 Cir.1990).
In general, store owners owe a duty to patrons to take reasonable care for their safety, although they are not the insurer of the patron's safety. Brock, 617 So.2d 1234. The extent of this duty, though limited, is an evolving responsibility dependent on the existence of a particular risk, the likelihood that it will be encountered by patrons, the feasibility and reasonableness of requiring storekeepers to guard against it, and certain policy considerations which might move a tribunal to find the storekeeper liable. But, the courts have said proprietors of public places only have a duty to protect patrons from injuries caused by third parties when it is within their power to do so. Id. To prevail, Parish must prove (among the other elements of negligence) Delta Fuel's duty to protect encompasses the risk that a patron might sustain injury from a negligently operated vehicle while exiting the restrooms provided for its patrons use. Whether this risk is within the ambit of the duty generally owed by store keepers requires the court to consider the particular facts and circumstances of the case. Seals v. Morris, 410 So.2d 715 (La.1981). In Nicholson v. Calcasieu Parish Police Jury, 96-314, p. 6-7 (La.App. 3 Cir. 12/11/96); 685 So.2d 507, 511 we stated:
The scope of protection (legal cause) inquiry is a question of policy whether the particular risk falls within the scope of the duty. See Faucheaux, 615 So.2d at 292. The duty-risk analysis is "highly fact-intensive" and the legal cause inquiry "fact bound." Roberts, 605 So.2d at 1055. Faucheaux, supra, summarizes the test for legal cause:
The scope of protection inquiry asks whether the enunciated rule extends or is intended to protect this plaintiff from this type of harm arising in this manner.... In determining the limitation to be placed on liability for defendant's substandard conduct, the proper inquiry is often how easily the risk of injury to plaintiff can be associated with the duty sought to be enforced.
The trial court concluded, as a matter of law, Delta Fuel's duty to protect its patrons did not extend to the harm which befell Parish. It relied chiefly on three cases: Mayeur v. Time Saver, Inc., 484 So.2d 192 (La.App. 4 Cir.1986), Mims v. Bradford, 503 So.2d 1083 (La.App. 2 Cir. 1987), and Millet v. Knockum, 503 So.2d 51 (La.App. 5 Cir.1987). In all the cases, store patrons were injured when negligently driven automobiles jumped the curb and hit them. The critical issue in each was identical to the present: Whether the store owner's duty extended to protect its patrons from the risk of harm encountered. The courts in all three cases decided the store owner's duty did not extend so far.
In its written reasons for judgment the trial court mentioned, but did not consider germane the decision in Martin v. Watson's Grocery, 615 So.2d 999 (La.App. 1 Cir.1993). Martin, like Mayeur and its progeny, also involved a store patron injured when pinned against the store by a run-a-way automobile. However, the Martin court held the risk of harm encountered by the patron was foreseeable and fell within the scope of the reasonable care duty owed by the store owner. The *21 court highlighted two factual circumstances as its basis for imposing a liability on the store owner for failing to take any steps to prevent a driver who lost control of his vehicle from striking a patron. Of particular importance to the Martin court, was the complete absence of protection afforded to patrons from the danger posed by out of control automobiles on the store premises. Specifically, the court noted the store did not have a curb or raised sidewalk separating the parking area from the store's entranceway. The court also considered salient the store owner's admission that he knew his customers often pulled up close to the store. Here, the trial judge dismissed the holding in Martin finding "[t]he present case has more similarity to Mayeur and its progeny because they all had sidewalks." But, the sidewalk in Mayeur was 5 inches high; in Mims it was 4½ inches high, and Millet it was 6 inches high. Even more significant the Mayeur court noted "[p]laintiff does not allege, and we are not aware of any violation of any statute, ordinance or rule by Time Saver concerning the placement of barriers in front of the store. Negligence per se because of such a violation is, therefore, not at issue."
Countering the defense's motion for summary judgment, plaintiff presented excerpts from Fabian Patin's deposition. Mr. Patin, an architectural expert, noted it is common practice for stores to build curbs measuring at least six inches high and six feet wide. However, the curb in this case measured only between 2 ¾3 inches high, notably less than the curb heights in Mayeur, Mims, Millet and those commonly constructed at similar business sites. According to Patin, had Delta Fuel's curb been designed in accordance with accepted building standards, including the ANSI code, and in conformity with its own architectural designed which was later altered, Parish's injuries would have been reduced.
Delta Fuel maintains that the ANSI standards are not applicable in this instance and Patin could not identify: (1) Any code or standard requiring a sidewalk/curb to be of any particular height; or (2) any code or standards that would relate to the placement of wheel stops or bollards. Further, it noted he could not "testify that having a higher or wider sidewalk would have prevented the accident in question." Delta Fuel references our holding in Pardee v. Natchitoches Parish Police Jury, 600 So.2d 867 (La.App. 3 Cir. 1992), writ denied, 604 So.2d 1008 (La. 1992) affirming the trial court's refusal to find liability for a slip and fall accident involving a non-handicapped customer who alleged the store owner violated the ANSI code. But plaintiff does not rely solely on violations of the ANSI standards in this case.
We surmise at the time Delta Fuel built its West Street location, various building codes and regulations had been adopted by the Parish of Calcasieu and/or the municipality of Vinton and the State Fire Marshall, including the Standard Building Code of the Southern Building Code Congress International, Inc.(SBCCI), to regulate the construction of buildings open to the public.[1] The SBCCI was published "to *22 serve as a comprehensive regulatory document to guide decisions aimed at protecting the public's life, health, and welfare in the built environment."[2] In addition, the State adopted the ANSI standards in 1977. Patin testified SBCCI and ANSI standards require that walkways accessible to the public measure at least six feet "from the face of the wall to the face of the obstruction." The walkway leading to and from the restroom in this case was only 4 feet wide. Patin noted:
A....Assuming that an automobile would be the face of an obstruction, then the question is how do you keep the automobile from invading that six foot space? And a bollard is the best way, because then you know exactly where the car is going to stop, or some sort of a pipe rail system. If you use a curb, then the question is well, what kind of car are we talking about? Are we talking about a small sports car, are we talking about older car, are we talking about a car pulling up ninety degrees or some other angle, is the car going to be puling up forward to it or backing up to it? Because each of those have a different amount of overhand from the wheel or tire space to the bumper, particularly like you were talking about say on a pickup truck that is backed up ... so it would depend on which criteria you use....
While the expert could not say whether there were minimum curb height standards in existence, he stated there are "architectural graphic standards, and probably site planning standards, maybe time saver standards that probably show curb details, and they probably show around six inch curbs." This is "just a common detail," he related, that is a "design standard." Patin noted Delta Fuel's original plans had sidewalks "on the east and west sides of the building" measuring "six foot wide" which was changed to "four [feet]." The plan also indicated these sidewalks were to measure at least 6 inches in height, but again this detail was altered when the drains were not built to "specs." The expert stated he "design[ed] buildings... decid[ed] sites ... [and knew] the purpose of a curb ... [was] to separate an automobile from the pedestrian. A curb six inches high to eight inches high is common, because at that point it provides somewhat of a barrier." The expert also noticed there was no damage to the building, only to the restroom door and even then the door's frame and hinges were not damaged. His observations and findings at the scene suggested to him that the driver of the run-a-way vehicle was not traveling at a "very fast speed at the time of impact." In his professional opinion, had the sidewalk been constructed as originally designed, "it would have reduced the immediate injury" to Parish.
None of the trilogy of Louisiana cases relied upon by the defense are on all fours with the present. Mayeur, Millet, and Mims all involved curbs or elevated sidewalks higher than the one in this case; and, we gather from the appellate courts' synopsis of the records, the plaintiffs in none of these cases alleged the storeowners violated any building code, standard, or regulation. We note, as well, unlike the first circuit in Martin, the fifth and second circuits in Millet and Mims felt compelled to follow the fourth circuit's holding in Mayeur. This is the first occasion, we turn to consider the issue of a store owner's duty to protect patrons from run-away vehicles on its premises. Adopting the reasoning in Schatz v. 7-Eleven, Inc., 128 So.2d 901 (Fla.App. 1st Dist.1961), and Watkins v. Davis, 308 S.W.2d 906 (Tex. Civ.App.1957), two cases from foreign jurisdictions, the Mayeur court rejected *23 plaintiff's claim finding the likelihood that "a motorist [would] negligently drive her car from the parking lot, over the curb, across the walkway and into a patron" was not "foreseeable in law." Mayeur, 484 So.2d at 195. Specifically, the court stated:
Reasonable care requires the store owner to protect against the probability of injuries foreseeable in law. That is, the risks encompassed within the scope of that duty include only those risks that are probable and foreseeable, not those risks which are merely foreseeable in fact as possible.
Plaintiff urges the "forseeability in law" principle adopted by the Mayeur court from the two cases mentioned does not support a "per se rule of unforseeability" in cases like the present; and, further, notes the facts in this case are more akin to those addressed in Springtree Properties, Inc. v. Hammond, 692 So.2d 164 (1997). In that case, the Florida Supreme Court distinguished the Schatz facts and specifically rejected adherence to a per se rule of unforseeability in cases involving out of control vehicles on store lots. We find the following excerpt from that opinion both instructive and persuasive:
This issue of forseeability as it pertains to proximate cause may be decided as a matter of law, but only "after the event and looking back from the harm to the actor's negligent conduct, it appears to the court highly extraordinary that [the conduct] should have brought about the harm." McCain, 593 So.2d at 504 (quoting Restatement (Second) of Torts, § 435(2) (1965)). In other words, the court should grant summary judgment on this issue only when it determines that no reasonable person could differ in concluding the accident was unforeseeable. Cohen v. Schrider, 533 So.2d 859, 860 (Fla. 4th DCA 1988). In cases where the evidence is conflicting, or the evidence permits differing reasonable inferences as to proximate cause, the question of forseeability as it relates to proximate cause must be left to the finder of fact. McCain, 593 So.2d at 504.
Springtree and Hardee's maintain that the trial court properly determined that no jury issue existed here because a per se rule of unforseeability exists in cases like the instant one. They contend that anything other than a per se rule would extend a business owner's duty beyond its intended limit. However, the majority of cases on which Springtree and Hardee's rely do not support such a rule. On the contrary, the majority of case law in this area establishes that the particular facts in each case will govern whether summary judgment is appropriate.
In Schatz v. 7-Eleven, Inc., 128 So.2d 901, 904 (Fla. 1st DCA 1961), the district court held that the accident therein was extraordinary and thus unforeseeable in contemplation of the law. That holding, however, was based on the particular facts in the case. In Schatz, a third party negligently propelled her vehicle over a curb, across a sidewalk, and into the defendant's store. 128 So.2d at 902. The vehicle struck and injured a business patron located inside the store. Id. Likewise, both Jones v. Dowdy. 443 So.2d 467 (Fla. 2d DCA 1984), and Krispy Kreme Doughnut Co. v. Cornett, 312 So.2d 771 (Fla. 1st DCA 1975), cert, denied, 330 So.2d 16 (Fla.1976), involved injuries that occurred when a vehicle entered a store and injured a customer located therein. In Jones the court found that summary judgment was appropriately granted. 443 So.2d at 467. In Krispy Kreme, the court similarly held that the defendant store owner's motion for directed verdict should have been granted. 312 So.2d at 775. Where the facts in these premises liability cases have differed only slightly the courts have rendered different results. In cases where an injury occurred outside the entrance or exit of a store or business, as was the case here, the courts have found summary judgment inappropriate. *24 For example, in Grissett v. Circle K Corp., 593 So.2d 291, 293 (Fla. 2d DCA 1992), the district court specifically recognized that the fact the accident occurred outside the store building distinguished the case from others such as Schatz and Jones in which summary judgment had been affirmed. See also Thompson v. Ward Enterprises, 341, So.2d 837, 838-39 (Fla. 3d DCA), cert. denied, 351 So.2d 409 (Fla.1977); Johnson v. Hatoum, 239 So.2d 22, 27 (Fla. 4th DCA 1970), cert. dismissed, 244 So.2d 740 (Fla.1971).
Other factors have also led the courts to reach diverging conclusions in these cases. In Cohen v. Schrider, 533 So.2d 859 (Fla. 4th DCA 1988), the district court reversed a summary judgment where a vehicle struck and injured the plaintiff who was using a telephone located outside the store. The court in Cohen distinguished this decision from its prior decision in Winn-Dixie Stores, Inc. V. Carn, 473 So.2d 742 (Fla. 4th DCA 1985), review denied, 484 So.2d 7 (Fla.1986). Cohen, 533 So.2d at 860-61. In Winn-Dixie, the court found that the trial court erred in failing to direct a verdict for the defendant store owner where the plaintiff was injured in a car which left a public roadway and hit the plaintiff while he was standing on a public sidewalk. 473 So.2d at 743. The plaintiff in Cablas[Cabals] v. Elkins[,] 368 So.2d 96 (Fla. 3d DCA 1979), was likewise injured by a vehicle that left a public roadway, and the court in that case, consistent with Winn-Dixie, affirmed the trial court's order granting defendant store owner's motion to dismiss.
While the majority of case law does not support a per se rule of unforseeability, there is a single case that seems to adhere to such a rule. Molinares v. El Centro Gallego, Inc., 545 So.2d 387 (Fla. 3d DCA), review denied, 557 So.2d 866 (Fla.1989), involved facts very similar to the instant case. In Molinares, the court concluded that, as a matter of law, the defendant did not breach any duty of care. Id. At 387-88. Specifically, the court held that, in its own view, the defendant business satisfied its duty where: (1) it provided a protective sidewalk with two-inch curb; and (2) it demonstrated that there were no prior, similar accidents at that location. Id. at 388.

We disapprove Molinares to the extent it holds that where these two factors exist an accident like the one in the instant case is as a matter of law per se unforeseeable. As evidenced by the foregoing cases, a number of other factors may affect whether a summary judgment is appropriate in a particular case. Moreover, the fact that no prior, similar accidents occurred at the exact same location in Molinares was not determinative of whether summary judgment should have been granted. The absence of a history of similar accidents does not necessarily relieve a defendant business of a duty to erect bumpers, guardrails, or warnings signs. The defendant business may have constructive knowledge of similar accidents at other similar locations. Constructive knowledge of these accidents may be sufficient to establish forseeability. Cf. Stevens v. Jefferson, 436 So.2d 33 (Fla.1983).
Whether Springtree and Hardee's knew or should have known of the risk to Hammond was a question for the jury in this case. As in Grissett, the affidavits filed in opposition to the motion for summary judgment raised issues concerning whether Springtree and Hardee's knew or should have known of the unsafe condition. Hammond introduced an affidavit identifying forty-five local commercial establishments that used vertical bumper posts. Moreover, an expert opined that the failure to install and maintain bumper posts was the proximate cause of Hammond's injury. (Emphasis ours).
*25 Delta Fuel urges us to overlook Florida's Supreme Court's recent observations and holding on this issue arguing it "employed a methodology which is radically different from the Louisiana duty-risk analysis." Further, it directs our attention to other decisions from foreign jurisdictions that seemingly follow a per se rule of no liability in such instances. We find the noted cases are not controlling in this State. Adherence to such a per se rule is neither compelled by Louisiana's jurisprudence nor the duty/risk methodology used by our courts in analyzing fault. To the contrary, our Supreme Court has said every negligence case must be decided on its own facts and circumstances. Foggin v. General Guaranty Insurance Co., 250 La. 347, 195 So.2d 636, 640 (1967). Whether a legal duty is owed by one party is a legal question; but, "[t]here is no `rule' for determining the scope of the duty." Roberts v. Benoit, 605 So.2d 1032, 1045 (La.1991). The latter inquiry is fact sensitive and ultimately turns on "a question of policy as to whether the particular risk falls within the scope of the duty." Id. Summary judgment is proper only where no duty exists as a matter of law and no factual or credibility disputes exists. Self v. Walker Oldsmobile Co., Inc., 614 So.2d 1371 (La.App. 3 Cir.1993). Delta Fuel owed a duty to its patron requiring that it take reasonable steps to protect their safety. Whether this legal duty encompassed the risk visited upon Parish is the larger question; and, one ordinarily left for the triers' resolution. The risk visited upon Parish was not so extraordinary or unforeseeable that a reasonable juror could not find it fell within the ambit of the duty owed by Delta Fuel. The record contains excerpts from the deposition of Michael Frenzel, a safety consultant, plaintiff intends to call as an expert witness at trial. In Frenzel's opinion the risk encountered by Parish was "foreseeable." As support for his assertion Frenzel cites, "Pedestrian Protection at Convenience Stores," an article from the Journal of the American Society of Safety Engineers which he quotes from as follows:
Parking lot accidents are predictable. We know that people do unexpected and destructive things with their cars. A foot can slip off the clutch. Vehicles slip into gear and overshoot parking places, and drivers hit the gas when they expect to hit the brake.
* * *
Convenience stores have special problems because of the large number of customers they serve and their patron mix. Efforts to maximize profits from available space have led to the introduction of many new products and services.
* * *
Because accidents are predictable in parking lots, convenience stores should include pedestrian protection in their original design.
The expert's deposition excerpts present genuine issues of fact and policy considerations which are relevant and material in resolving the risk inclusion question. Whether Delta Fuel should have known of the risk to Parish and should have done more to protect her are questions which the jury should resolve. No per se rule of non-liability is applicable in this instance; and, the record, we have examined, does not contain sufficient undisputed evidence to support the trial court's decision to summarily deny Parish her day before the ultimate triers of fact.

DECREE
For the foregoing reasons, the grant of summary judgment is set aside and the case is remanded to the trial court for further proceedings. All costs are assessed against the defendant-appellee.
REVERSED.
AMY, J., dissents.
AMY, J., dissenting.
*26 I respectfully dissent. In my opinion, the duty owed by the defendant convenience store does not, as a matter of law, extend to the particular facts and circumstances presented here.
NOTES
[1] As noted in the preamble to the State's recently adopted Uniform Construction Code "the model codes of the Southern Building Code Congress International, Inc. and the National Electrical Code, published by the National Fire Protection Association, are construction codes which have been widely adopted in this State ..." La. R.S. 40:1727(3). Patin testified:

[t]he city of Vinton had adopted the Standard Building Code, but the parish had also adopted it. If neither one of them had adopted it, then the state requires that jurisdictions that don't have a nationally recognized building code, adopt a standard building code, so I think it would have been caught any kind of way.
* * *
And even if both of those happen to be incorrect, it wasn't in the city limits, and the parish hadn't adopted it, then in reality the fire marshall would have mandated complying with the ANSI for two reasons. One, state law would have required it at that point, as well as state law would have required compliance with the Standard Building Code, which the Standard Building Code would have required compliance with ANSI.
[2] The SBCCI, though it references and adopts the ANSI standards, was promulgated to assure "a high degree of life safety" for public users generally.