617 So.2d 1234 (1993)
Tonya BROCK, Plaintiff-Appellee,
v.
WINN DIXIE LOUISIANA, INC., Defendant-Appellant.
No. 92-186.
Court of Appeal of Louisiana, Third Circuit.
April 21, 1993.
Writ Denied June 25, 1993.
*1235 Henry H. Lemoine, Harold A. Van Dyke, III, Pineville, for plaintiff-appellee Tonya Brock.
Russell L. Potter, Alexandria, for defendant-appellant Winn-Dixie Louisiana, Inc.
Before STOKER, THIBODEAUX and COOKS, JJ.
COOKS, Judge.
This tort action was filed by Tonya Brock against Winn Dixie for injuries sustained when she was knocked to the floor while store employees attempted to apprehend a shoplifter. Following trial, judgment was rendered awarding her Five Thousand Six Hundred Fourteen Dollars and 44/100 ($5,614.44). Winn Dixie appeals. We affirm as amended.

FACTS
David Paulk, Winn Dixie's store manager, observed a 17 year old boy stuffing two fifths of whiskey in his pants. According to Paulk, he was standing at the end of aisle 10 fifty to sixty feet away from the boy who was standing at the front of the aisle. Adjacent to the front of aisle 10 was a check-out lane which led to one of the store's two (2) exit doors.
Noticing the boy's attempt to conceal the whiskey, Paulk hollered at another store employee to "go up front." He confirmed *1236 that the "pitch" of this instruction was sufficient to alert and signal other employees that a suspected shoplifter was in the store. As these employees, all located in the rear of the store, proceeded up different aisles to the front of the store Paulk hollered "give me the whiskey" to the suspect who pulled the liquor out of his pants and replaced it on the shelf.
Paulk then proceeded in the direction of the suspect who ran toward the exit area. Paulk and the other employees gave chase yelling "get him." In his attempt to escape, the suspect ran through the adjacent check-out lane colliding with Mrs. Brock knocking her to the floor. Mrs. Brock recalled hearing the boy say he was "sorry" as he slowed down momentarily while continuing through the check-out lane. Ultimately, he was apprehended by the store manager and other employees near the front door. The boy did not offer any resistance when grabbed by these employees.
From the adverse judgment, Winn Dixie assigns the following errors for review:
(1) The trial court erred in holding that Winn Dixie breached a legal duty owed to plaintiff by confronting and pursuing the shoplifter in its store and that these actions were a legal cause of the plaintiff's injuries.
(2) The trial court erred in failing to hold the shoplifter at fault and in failing to reduce the proportion of fault assigned to Winn Dixie accordingly.

DUTY-RISK ANALYSIS
Applying the duty-risk analysis to similar suits, the Louisiana Supreme Court instructed in Harris v. Pizza Hut of Louisiana, Inc., 455 So.2d 1364 (La.1984) that the pertinent inquiries are:
"I. Whether the conduct of which plaintiff complains was a cause-in-fact of the harm.
II. Whether there was a duty on the part of the defendant which was imposed to protect against the risk involved;
III. Whether there was a breach of that duty; and
IV. Damages"

I.

CAUSE IN FACT
Cause-in-fact is purely factual and generally a "but for inquiry." Roberts v. Benoit, 605 So.2d 1032 (La.1991); Malone, Ruminations on Cause-in-Fact, 9 Stan. L.Rev. 60 (1956); and Robertson, Powers and Anderson, Cases and Materials on Torts 136-59 (1989). It requires the trier of facts to determine whether the plaintiff's injury would have occurred had defendant not engaged in the conduct in question. Rephrased in this case, we must review whether the trial judge manifestly erred in concluding that Mrs. Brock would not have sustained injury "but for" the action of the store employees in attempting to apprehend the shoplifter.
Appellant argues no evidence was introduced at trial "to show that the shoplifter would not have knocked down [Mrs. Brock] `but for' the pursuit of the Winn Dixie employees." Citing Martin v. Piggly Wiggly Corp., 469 So.2d 1057 (La.App. 2nd Cir.1985) and Butler v. K-Mart Corporation, 432 So.2d 968 (La.App. 4th Cir.1983), Appellant urges the holdings in these cases are dispositive of the "but for" issue now before us. We disagree.
First, Appellant's construction of the evidence excludes certain acts essential to resolution of the "but for inquiry." Attention must be given to the events which transpired immediately prior to the shoplifter's flight. Instead of taking steps to quietly alert store employees and to move within reach of the boy, then unaware of the surveillance, the store manager elected to holler instructions at another employee and to yell at the shoplifter who was 50-60 feet out of grabbing range. It is highly unlikely the accident would have occurred had the manager taken these precautionary *1237 steps, particularly noting the boy offered no resistance and was apologetic when eventually apprehended. The manager and the employees visible presence, within hands length, probably would have abated the boy's desire to run. Certainly the employees would have been in a position to quickly apprehend him.
The cases cited by appellant are factually distinguishable from the present. In Martin v. Piggly Wiggly, supra, a known shoplifter entered the Piggly Wiggly Store and began to eat doughnuts. A store security guard approached the shoplifter who willingly accompanied him to a security area. While the security guard attempted to handcuff the shoplifter, she was knocked to the floor by a woman who came to the shoplifter's aid. The shoplifter fled running into a patron. In Butler v. K-Mart Corporation, supra, a patron sustained injuries when a shoplifter flung open an exit door and ran out of the store. The store employees did not chase the shoplifter in the store nor begin the chase until he was in the parking lot.
While the facts in Martin and Butler similarly involve fleeing shoplifters, the present case is factually different in other respects. An "intervenor" did not suddenly appear to aid the shoplifter, as in Martin; and the chase did not take place outside the store, as in Butler. Here, the store employees opted to excite and chase the shoplifter in the store without taking any precaution to cordon off the suspect's escape route. "But for" the manager's conduct prior to the chase, it is unlikely the boy would have known of the approaching store employees permitting his safe apprehension before he had opportunity to run into Mrs. Brock. Therefore, the trial judge could have reasonably concluded this conduct was a cause-in-fact of Mrs. Brock's injuries.

II.

DUTY
Duty is a question of law. Store owners owe a duty to patrons to take reasonable care for their safety, although they are not the insurer of the patron's safety. Butler v. K-Mart, 432 So.2d 969 (La.App. 4th Cir.1983); Phillips v. Equitable Life Assur. Co, 413 So.2d 696 (La.App. 4th Cir. 1982), writ denied, 420 So.2d 164 (La. 1982). Proprietors of public places have a duty to protect patrons from injuries caused by third parties when it is within their power to do so. Cooper v. Ruffino, 172 So.2d 717 (La.App. 4th Cir.1965).
A store owner's right to detain shoplifters and protect inventory must be balanced against the duty it owes to patrons to take reasonable steps to guard their safety, which may in certain instances include the harm occasioned by fleeing shoplifters. Bolden v. Winn Dixie, 513 So.2d 341 (La.App. 4th Cir.1987), writ denied, 514 So.2d 1177 (La.1987). When store owners undertake to exercise their "police-like" authority to detain shoplifters, they must do so with reasonable caution to avoid placing patrons in foreseeable danger.
The manager confirmed it was not unusual for shoplifters to run. On past occasions, he witnessed shoplifters attempting to flee from the store. He candidly confessed that running shoplifters create a hazardous condition for customers; but qualified his response by saying he "couldn't control that." There were no existing policies or procedures which served as "guidelines" for store employees in executing safe apprehension of suspected shoplifters. As revealed by the store manager, this function was left entirely to his discretion to act as he "sees best." In his judgment this equated to "going after" the shoplifter without considering the risk of injury obviously posed to customers.
We reject the manager's simplistic understanding of a store keeper's duty to its patrons. In exercising its power to legally detain shoplifters, Winn Dixie owed a duty to its patrons to do so quietly without arousing the boy, if possible; and without giving chase in the store when employees knew they were not in a position, by *1238 virtue of their location, to quickly subdue the boy who they reasonably could have expected possessed the speed of youth and the desire to make good his escape.

III.

BREACH OF DUTY
The store manager breached this duty first by yelling at and alerting the suspect that his apprehension was imminent. The breach was compounded when the employees decided to begin their chase of the boy more than 50-60 feet away from them when it was apparent he could escape through the adjacent check-out lane which provided access to the front door. The risk of injury in this case was not only reasonably foreseeable; but substantially likely to occur in this instance, as admitted by the store manager.

IV.

DAMAGES
Appellant does not attack the quantum awarded. Rather it urges the trial judge erred in failing to apportion any fault to the shoplifter, thereby reducing its "percentage" responsibility for payment of the award.
La.Code of Civil Procedure Article 1812(C) and La.Civil Code Articles 2323 and 2324 do not expressly mandate quantification of tortfeasors' fault. Jurisprudentially, we have sparingly applied these articles to phantom tortfeasors not joined as parties to the action or who settled prior to suit. The Uniform Comparative Fault Act, as explained in the comments following Section 2, instructs:
"The limitation to parties to the action means ignoring other persons who may have been at fault with regard to the particular injury but who have not been joined as parties. This is a deliberate decision. It cannot be told with certainty whether that person was actually at fault or what amount of fault should be attributed to him, or whether he will ever be sued, or whether the statue or limitations will run on him, etc. An attempt to settle these matters in a suit to which he is not a party would not be binding on him. Both plaintiff and defendants will have significant incentive for joining available defendants who may be liable. The more parties joined whose fault contributed to the injury, the smaller the percentage of fault contributed to the injury, the smaller the percentage of fault allocated to each of the other parties, whether plaintiff or defendant." See also 40 La.L.Rev. at 426.
The shoplifter was not joined as a party in this action; and the trial court did not discuss the fault of the shoplifter in its decision. Although we recognize La.Code of Civil Procedure Article 1812(C), as amended, permits a trial judge at his discretion to submit to the jury the question of whether another person's fault contributed to plaintiff's damages, if appropriate, the article is "permissive" in directive. It does not impose an absolute duty on the trial judge to make such submission or inquiry in every case where fault of an absent third party is raised. Sufficient evidence must exist to establish that the phantom tortfeasor's conduct was a cause-in-fact of the damages and he breached a legal duty to the plaintiff. Devereaux v. Allstate Ins. Co., 557 So.2d 1091 (La.App. 2nd Cir.1990).
While the trial judge may have concluded in this case that Mrs. Brock's injury resulted solely from the manager and other store employees' failure to properly apprehend the suspected shoplifter, we find it difficult not to assess "some fault" to the shoplifter. However, we are not required to accept appellant's version of the causative facts in making this assignment. Its failure to join the shoplifter prevents us from examining conflicting evidence which might have been introduced to explain why the young boy ran. We assign forty percent (40%) as the lowest fault percentage attributable to the boy's conduct within reasonable range of the trial judge's discretion. Accordingly, the appellant's fault is commensurately reduced to sixty percent (60%). For these reasons, the decision of the trial court is affirmed as amended below. *1239 All costs are assessed against defendant-appellant.

DECREE
The trial court's judgment is amended to reduce Appellant's apportioned fault to sixty percent (60%). In all other respects the judgment is affirmed.
AFFIRMED AS AMENDED.
STOKER, J., dissents and assigns written reasons.
STOKER, Judge, dissenting.
The majority affirms the trial court's holding that upon the mere decision of a shoplifter, not under custody, to flee from a store, the store is at fault when the fleeing wrongdoer collides with a store patron and injures her.
I respectfully dissent from the majority holding in this case that the defendant supermarket's employees did or failed to do anything which was a cause in fact of the injuries sustained by plaintiff. The sole cause in fact of the collision between the fleeing youth and plaintiff was the act of the youth in attempting to avoid detention and possible consequences of his apparent attempt to steal from the supermarket by shoplifting.
The trial court and the majority of this court are of the opinion that the store personnel mishandled the situation. I am not sure what the trial court and the majority would have had them do or what it was that the store personnel did improperly. No store employer laid a hand on the youth. As the majority notes, the store manager saw the youth stuffing the whiskey in his pants from a considerable distance, and the manager yelled at him from that distance to put the merchandise back. The youth complied and ran. He was never in custody. He was never detained. He just ran. He was chased because he ran; he did not run because he was chased.
It is entirely speculative that, if approached in some other way, the youth would not have fled the moment he realized he had been detected.
The defendant was not at fault in this case. I would reverse the trial court's judgment.