SCHOTT, Chief Judge.
This case arose out of an accident on an elevator at the plant owned by defendant, Louisiana Coca-Cola Bottling Company, Ltd. (Coke). William Fontana’s hand was crushed in the elevator door. He and his wife sued Coke and Otis Elevator Company for damages. After a jury trial, the court awarded a judgment to him against Coke in the amount of $200,000.00, reduced by his fault of 20%; dismissed his suit against Otis; dismissed his wife’s suit for loss of consortium; and awarded a judgment to his intervening worker’s compensation carrier. Coke has appealed and plaintiffs have answered the appeal. The issues are essentially factual and concern liability as well as quantum.
Plaintiff was a technician employed by Mogul Corporation and was assigned to provide services at Coke’s plant starting in 1982. On May 18,1987, while engaged in his duties he entered a freight elevator with two Coke employees, Ray Labat and Carlos Hoffman. Labat stepped to the right rear of the elevator, Hoffman to the left front, and plaintiff to the middle front.
The elevator’s outer door consisted of counter balanced top and bottom sections which came together vertically at the mid point of the elevator. There were straps hanging from the top section of the door both inside and outside the elevator which enabled one to pull the top section down and simultaneously bring the bottom section up. The edges of the door sections were metal. Mounted along the outside of the vertical edge of the top section was an angle iron which overlapped the bottom section when the door was closed. This overlapping plate was referred to as a rigid astragal. Plaintiff sought to prove that the elevator was defective because there was no crushable astragal between the doors as required by applicable ANSI standards.
At trial, plaintiff testified that he grabbed the outside strap while he was entering the elevator and turned around to face the door when Hoffman suddenly pulled the door closed with the inside strap crushing his hand between the sections. Hoffman and Labat testified that plaintiff alone closed the door crushing his own hand. In rebuttal, plaintiff testified that Labat told him after the accident that he was sorry, but he could not stop Hoffman from closing the door and Hoffman himself said he was sorry.
The case was submitted to the jury on written interrogatories. On the issue of Coke’s liability, the jury found that the elevator was a defective product and the defective condition of the elevator was a substantial cause of plaintiffs injuries. They also found that Coke or its employee was negligent and this negligence was a substantial cause of plaintiffs injuries. As to Otis, the jury found that the elevator was defective or unreasonably dangerous in normal use and this was a *813 substantial cause of plaintiffs injuries. But, they found that this defect did not exist when the elevator was manufactured and they found no negligence on the part of Otis. They found contributory negligence on the part of plaintiff and they allocated fault of 70% to Coke, 20% to Otis, and 10% to plaintiff. The general verdict was $200,000.00. Finally, they found that plaintiffs wife suffered no loss of consortium, society, and services because of plaintiffs accident. Recognizing the inconsistency between the interrogatories and the verdict as far as Otis was concerned the trial judge had the jury resume deliberations and return with an allocation of fault as between Coke and plaintiff. They did so and assigned 80% to Coke and 20% to plaintiff.
Coke’s first two assignments of error regard the quantum of damages. Plaintiffs right, favored hand was crushed by the door causing fractures and ligamentous injuries. He was treated by Dr. Russell Levy, an orthopedic surgeon, for the first time on May 20, 1987. He wore a cast for thirty days and underwent physical therapy, but he continued to have swelling and pain. In October Dr. Levy had him take a nerve conduction test which indicated carpal tunnel syndrome. Dr. Levy performed surgery on plaintiff for this condition on October 12, 1987. Plaintiff continued to have great difficulty with his hand including weakness and loss of sensation with loss grip. In January 1988, he began to show symptoms of ulnar nerve neu-ropathy. Because these symptoms continued, Dr. Levy had nerve conduction tests run in April 1988 and March 1989, but these tests did not confirm an ulnar nerve problem. But the symptoms persisted, and another nerve conduction test was performed on November 21, 1990, which was consistent with ulnar nerve neuropathy at the elbow level.
Dr. Levy referred plaintiff to Dr. Harold Stokes, a neurosurgeon specializing in the hand. He performed ulnar nerve surgery on plaintiff on January 3, 1991. After providing plaintiff with a course of treatment over several months, Dr. Stokes discharged him in July 1991 with a 10% permanent partial impairment of the right arm but no functional impairment of the hand.
Coke argues that plaintiff failed to prove the accident caused his ulnar nerve problem. While this argument is supported to some extent by the testimony of the neurologist who ran the nerve conduction tests, it overlooks the testimony of Drs. Levy and Stokes who related all of plaintiffs problems including the ulnar nerve condition to the accident.
Coke argues the award of $200,000.00 is excessive because plaintiff has no permanent disability and cites a plethora of cases in which similar injuries resulted in lower verdicts. Plaintiff was subjected to considerable pain, suffering, disability, and inconvenience for at least four years and two months and twice underwent surgery. By the time of the trial in November 1992, he was still suffering some restriction in his activities and some occasional pain. We are unable to conclude that the award is beyond that which a reasonable trier of fact could assess for the effects of these particular injuries to this particular plaintiff and consequently a reduction of the award is not warranted. Youn v. Maritime Overseas Corp., 623 So.2d 1257, 1261 (La.1993).
Next, Coke would have this court reverse the liability portion of the judgment because plaintiffs testimony was not credible. Coke correctly argues that plaintiffs trial testimony was impeached with his testimony at a pre-trial deposition in which he had stated that he alone grabbed the inside elevator strap and, in effect, pulled the door down on his own hand. However, the jury heard all this and believed plaintiffs revised testimony at trial. We are unable to conclude that the contradiction between plaintiffs deposition testimony and his trial testimony warrants a finding of manifest error in the light of Stobart v. State through DOTD, 617 So.2d 880, 882 (La.1993).
Next Coke argues the jury’s finding of only 20% fault on plaintiff was manifestly erroneous. This argument depends largely upon Coke’s previous assertion that plaintiffs testimony was not credible. In any event, Stobart precludes a revision of the jury’s assessment of fault even though this court *814 may believe plaintiffs fault was greater than the jury’s finding.
Coke’s next assignment of error concerns the jury’s finding that the elevator was defective. The elevator was installed in 1949. In 1986, the ANSI standards first prohibited a rigid astragal in a new elevator. By their own terms, the standards did not extend this prohibition to an existing elevator unless it was substantially renovated or altered. This did not happen with the subject elevator. In addition, the City of New Orleans did not even recognize this new standard at the time of plaintiffs accident. Consequently, the only evidence in the record that this elevator was defective was plaintiffs expert’s opinion supported by ANSI guidelines which were not applicable to the case. See Zanders v. Lambert, 514 So.2d 617 (La.App. 4th Cir.1987), writ denied 515 So.2d 1109.
In addition, all of plaintiffs expert’s concern with the safety of the elevator was over the “guillotine” [the expert’s term] danger of the astragal’s shearing a hand. This is obviously not what happened to plaintiff so that the astragal itself was not involved in the accident. Had the astragal played a part in the accident, plaintiffs hand or fingers would have been “guillotined.” Plaintiffs position was that the astragal should have been removed by Coke and the door retrofitted with some sort of synthetic rubber cushion. However, Coke’s expert established that any such cushion would have to be rigid enough to seal the door sections tightly closed. Consequently, it would still cause some crushing damage to one’s hand. We can only speculate as to why the jury found the door defective, but the only evidence of defectiveness other than that discussed above was plaintiffs expert’s opinion that the straps were in the wrong position and were too short. But a fair reading of the record compels the conclusion that the only defect plaintiff really set out to prove was the rigid astragal.
Since Coke’s fault was found to be a combination of the negligence of its employee and the defective thing in its custody we are confronted with the question of whether Coke is entitled to a reduction of its percentage of fault since plaintiff failed to prove his claim of strict liability. The answer is in the jury’s conclusion that plaintiff was guilty of only 20% of the total fault. The effect of comparative negligence is to reduce the amount of damages recoverable in proportion to the degree or percentage of negligence attributable to the person suffering the loss. LSA-C.C. art. 2323. The jury awarded plaintiff $200,000.00. Its allocation of 20% of the fault to plaintiff results in a reduction of the award by that 20% and no more.
Lastly, Coke argues that the award was based upon improper argument before the jury by plaintiffs counsel. The transcript does not contain the closing argument or the objections. Consequently, this issue is not properly before us.
In his answer to the appeal, plaintiff contends the jury erred by assigning any contributory fault. He argues that the finding of any contributory negligence on his part is inconsistent with the finding that Hoffman suddenly pulled the door down. If that is so, it would be just as logical to conclude that all the fault was on plaintiff and none on Coke’s employee. Stobart dictates that we affirm the jury’s resolution of this problem even though we might have done otherwise had we been triers of fact.
Accordingly, the judgment appealed from is affirmed.

AFFIRMED.