11ARMSTRONG, Judge.
This is an appeal from a judgment for the plaintiff in a personal injury case. The plaintiff, Mary Ellen Bradford, was in a Winn Dixie supermarket. A shoplifter was trying to escape from the store with stolen cigarettes. Ms. Bradford alleges that a Winn Dixie manager, who was chasing the shoplifter, rah into her very hard, knocking her off her feet and into the air, causing her to suffer a serious back injury. She sued Winn Dixie for negligence. The jury found liability and determined the damages to be $350,000. Winn Dixie appeals as to alleged procedural irregularities in the trial, as to liability and as to the quantum of damages. Finding no reversible error, we affirm.
Winn Dixie’s first argument concerns the voir dire during jury selection. Winn Dixie argues that, during the questioning of one prospective juror, the plaintiffs counsel went beyond the proper bounds of voir dire and had the prospective juror, in effect, “testify” in a way that prejudiced Winn Dixie. Winn Dixie moved for a mistrial based upon the alleged prejudice during the voir dire, and the trial court denied Winn Dixie’s mistrial motion. Winn Dixie applied to this court for supervisory writs but the application was denied with the notation that, if Winn Dixie lost at trial, then Winn Dixie could raise the issue again by way^of a motion for new trial. After trial, Winn Dixie did move for a new trial, based upon the alleged prejudice in the voir dire, and the trial court denied Winn Dixie’s new trial motion. On appeal, Winn Dixie argues that it is entitled to a new trial because of the alleged prejudice during the voir dire.
There is no transcript of the voir dire because no court reporter was present to record it. The trial court specifically found, in a written opinion, that Winn Dixie had not requested that the voir dire be on the record. In the absence of either a transcript of the proceedings at issue or a narrative of the facts agreed to by the parties, there is nothing for appellate review and the trial court’s ruling is presumed correct. Cooke v. Allstate Ins. Co., 93-1057 (La.App. 4th Cir. 4/14/94), 635 So.2d 1330; Tayco Construction Co. v. La Cuisine Restaurant, Inc., 593 So.2d 954, 955 (La.App. 4th Cir.1992). However, because this court’s denial of Winn Dixie’s writ application stated that a record could be made for appellate review in connection with a Winn Dixie motion for new trial, because Winn Dixie attempted to so make a record in connection with its motion for a new trial, and because the briefs of the parties do not disagree as to the substance of what transpired during the voir dire, we will consider this issue.
The plaintiffs counsel, through general questions directed to the jury pool as a whole, identified a prospective juror who had worked for Winn Dixie fifteen years previously. Plaintiffs counsel asked the prospective juror whether he had seen any incidents with shoplifters while employed at Winn Dixie, what he had done, and whether his actions were pursuant to a Winn Dixie policy. The prospective juror’s responses were that he had seen shoplifters fleeing the store while he was working at the check-out counter, that he had tried to trip shoplifters as they ran by, and that such tripping was not Winn Dixie policy but that he had done it because he was “young and dumb” at the time. There were some objections by Winn Dixie’s counsel, and the trial court directed plaintiffs counsel to rephrase a question and then cut off the line of questioning.
Winn Dixie argues that it was prejudiced because the prospective juror’s answers “planted the idea” in the minds of all members of the jury pool that Winn Dixie encouraged its employees to trip shoplifters. We see no substantial prejudice. First, the prospective | furor’s answers regarded tripping shoplifters whereas the present case involves the possible danger to customers presented by store employees running through the store chasing fleeing shoplifters. The two activities, tripping and chasing, are dissimilar generally and in the specific respect that tripping shoplifters does not appear to present any danger to customers whereas running through the store chasing shoplifters does present at lease some risk to customers. Second, the prospective juror stated that *467 tripping shoplifters was not Winn Dixie policy. This rebuts the notion that Winn Dixie “encouraged” its employees to trip shoplifters. Indeed, the prospective juror said that he had tripped shoplifters only because he was “young and dumb” at the time. Lastly, the trial court instructed the jury on the record on at least two occasions, once near the beginning of the trial and once near the end of the trial, that only what they heard from the witness stand could be considered as evidence.
Winn Dixie concedes that “mistrials are properly granted when there is a fundamental failure in the proceedings and it is impossible to reach a proper judgment because of this irregularity. Searle v. Travelers Ins. Co., Inc., 557 So.2d 321 (La.App. 4th Cir. 1990); Spencer v. Children’s Hospital, 432 So.2d 823 (La.1983).” The voir dire incident in the present case certainly does not constitute a “fundamental failure” and certainly did not make it impossible to reach a proper judgment.
Upon learning that there was a former employee of Winn Dixie among the pool of prospective jurors, it was reasonable for the plaintiff’s counsel to question that prospective juror as to relevant experiences as a Winn Dixie employee that might affect the prospective juror’s decision as a juror in this case. However, jury voir dire is not a vehicle to present facts or arguments to the jury pool from which the jury will be selected. Morgan v. Liberty Mutual Ins. Co., 323 So.2d 855, 859 (La.App. 4th Cir.1975), app. dismissed, 325 So.2d 282 (La.1976). The trial court must necessarily exercise its discretion in drawing the line between proper and improper jury voir dire questions. Trahan v. Odell Vinson Oil Field Contractors, Inc., 295 So.2d 224, 227 (La.App. 3rd Cir.1974). There was no abuse of that discretion in the present case.
Winn Dixie argues that the trial court did not employ proper procedures in handling Winn Dixie’s mistrial motion. That mistrial motion was made at the conclusion of jury Uselection. Winn Dixie was allowed to make and argue its mistrial motion at a bench conference out of the hearing of the jury. Thus, Winn Dixie was given a full opportunity to state the specific reasons for its mistrial motion. As the voir dire incident occurred in open court, and was observed by the trial judge, there was no reason to present additional evidence in support of the mistrial motion. (Winn Dixie does not assert that it needed to present any evidence at that time.) The trial court orally denied the mistrial motion and, two days later, in response to Winn Dixie’s writ application, signed a written opinion recounting the relevant facts and sequence of events and giving reasons for denial of the mistrial motion. (We note that, in the absence of either a transcript or a narrative of facts agreed to by the parties, the trial court’s narrative of facts in its opinion is conclusive. La.Code Civ.Proc. art. 2131.)
The only shortcoming that we can see in the proceedings as to the mistrial motion is that, like the voir dire itself, they were not on the record as no court reporter was present. However, Winn Dixie did not request that the mistrial motion proceedings be on the record. Thus, because this error, if it was one, was. not preserved below, it cannot be raised on appeal. Rule 3-1 of the Uniform Rules of Louisiana Courts of Appeal; Shepherd v. Allstate Ins. Co., 562 So.2d 1099, 1102 (La.App. 4th Cir.1990); Taylor v. First Jersey Securities, 533 So.2d 1383, 1388 (La.App. 4th Cir.1988), writ denied, 538 So.2d 593, 594 (La.1989); Handy v. Cheatum, 410 So.2d 322 (La.App. 4th Cir.1982). In any case, if the lack of a court reporter for the mistrial motion proceedings was an error, it obviously is harmless error because there is no dispute as to the substance of or reasons for the mistrial motion and because the trial court provided a written opinion explaining why it found the mistrial motion to be without merit.
In sum, we see no reversible error in connection with the jury voir dire incident or Winn Dixie’s mistrial motion.
Next, Winn Dixie argues that it was prejudiced by certain remarks of the plaintiffs counsel during closing arguments and that, thus Winn Dixie is entitled to a new trial. Winn Dixie moved for a mistrial but that motion was denied by the trial court.
*468 | 5There is no transcript of the closing arguments because they were not on the record. Winn Dixie does not claim to have requested that the closing arguments be on the record so we presume that Winn Dixie did not so request. Thus, the short answer to Winn Dixie’s argument is that a trial court’s ruling regarding a jury argument is presumed correct if the record does not contain either a transcript of the events at issue or a narrative statement of facts agreed to by the parties. Fontana v. Coca Cola Enterprises, Inc., 93-1003 (La.App. 4th Cir. 2/11/94) 632 So.2d 811; Cooke v. Allstate Ins. Co., 93-1057 (La.App. 4th Cir. 4/14/94) 635 So.2d 1330. However, because the substance of the events at issue is substantially agreed to by the opposing briefs, we will review Winn Dixie’s argument.
First, Winn Dixie complains that the plaintiff’s counsel argued to the jury that four Winn Dixie employees were chasing the shoplifter when, in fact, there was no evidence that Winn Dixie employees did, in fact, chase the shoplifter. However, the plaintiff herself testified that she was in the area of the store (near the front doors) where, it is conceded by Winn Dixie, the shoplifter was captured. The plaintiff also testified that a Winn Dixie manager, who was running, ran over her at that location. There is no dispute that the plaintiff was knocked down at almost the same time as the shoplifter was captured. There is no dispute that the Winn Dixie manager was involved in the capture of the shoplifter. It is a fair inference that the Winn Dixie manager, who did not testify, was chasing the shoplifter. Also, Winn Dixie’s assistant manager testified that four Winn Dixie employees, himself, the manager and two others, were involved in the capture of the shoplifter. He also testified that there was a collision between himself and the shoplifter but that, within seconds, the manager and the two other Winn Dixie employees joined him in subduing the shoplifter. And, he also testified that all of this took place by the front doors of the store — where the plaintiff was located when she was run over. Thus, it is a fair inference that four Winn Dixie employees were chasing the shoplifter at some point even if it was for just a short time prior to the capture of the shoplifter. Consequently, the complained-of closing argument reference to four Winn Dixie employees chasing the shoplifter was not improper. Burks v. McKean, 559 So.2d 921, 925-26 (La.App. 2d Cir.), writ denied, 566 So.2d 398 (La.1990).
| sAlso, the trial court instructed the jury immediately before the closing arguments that what the attorneys said was not evidence and that only what the jury heard from the witness stand was evidence. Thus, if a closing argument was not in accord with the evidence, then the danger of actual prejudice was minimized.
Considering the trial court’s firsthand view of the closing argument controversy, the trial court’s instruction to the jury that the closing arguments were not evidence and, perhaps most importantly, the fact that there was testimony from which one could reasonably infer that four Winn Dixie employees were involved in pursuit of the shoplifter, there was no reversible error in the trial court’s refusal to grant a mistrial.
Further, with the possible exception that the closing argument itself was not on the record, the trial court handled the closing argument controversy in a procedurally proper manner. The trial court heard Winn Dixie’s mistrial motion on the record, out of the presence of the jury, and gave his reasons for denying the motion on the record. Thus, Winn Dixie was given an adequate opportunity to. present with specificity the reasons for its motion.
Although the closing argument itself was not on the record, Winn Dixie did not request it to be on the record. Thus, this “error”, if it was one, was not preserved below and may not be raised on appeal. Rule 3-1 of the Uniform Rules of Louisiana Courts of Appeal; Shepherd v. Allstate Ins. Co., 562 So.2d 1099, 1102 (La.App. 4th Cir.1990); Taylor v. First Jersey Securities, 533 So.2d 1383, 1388 (La.App. 4th Cir.1988); writ denied, 538 So.2d 593, 594 (La.1989); Handy v. Cheatum, 410 So.2d 322 (La.App. 4th Cir.1982). In any case, even if we accept exactly Winn Dixie’s characterization of plaintiff’s counsel’s closing argument, that there were four Winn Dixie employees chasing the shoplifter, there *469 was testimony from which one could reasonably infer that four Winn Dixie employees were in pursuit of the shoplifter. Thus, even after accepting exactly Winn Dixie’s version of the plaintiffs counsel’s closing argument, there was no reversible error. Consequently, the lack of a transcript of the closing argument at issue has not prevented our review of this issue.
Winn Dixie also complains that: “Further, during plaintiffs counsel’s closing argument, plaintiffs counsel told the jury that because Winn Dixie Louisiana, Inc. was the 17 only defendant present in court for this trial, if the jury did not find Winn Dixie Louisiana, Inc. negligent the [plaintiff] would get nothing.” Winn Dixie also complains that plaintiffs counsel, in closing argument, stated that if Winn Dixie was not found to be a cause-in-faet of the plaintiffs injuries, then the plaintiff would get nothing.
In the first place, the statements of the plaintiffs counsel were obviously correct. If the only defendant in a negligence trial is found to be not negligent or not to have caused the plaintiffs injury, then the plaintiff necessarily will get nothing. Thus, the plaintiffs counsel did not in any way mislead or confuse the jury.
Second, the plaintiffs brief explains that plaintiffs counsel simply was explaining the jury verdict form to the jury and, based upon a review of the jury verdict form, that is obviously correct. The first two questions, the first of which asks whether Winn Dixie was negligent and the second of which asks whether Winn Dixie was a cause of the plaintiffs injury, each state that if the answer is “no”, then the jury should stop and return to the courtroom. Thus, the plaintiffs counsel correctly explained the first two questions of the jury verdict form and did not mislead or confuse the jury. Consequently, the complained of remarks in the closing argument of the plaintiffs counsel were not improper.
In sum, as to the plaintiffs counsel’s closing arguments, we see no reversible error in the trial court’s denials of Winn Dixie’s mistrial motion and no prejudice to Winn Dixie. See generally, e.g., Guidry v. Boston Old Colony Ins. Co., 540 So.2d 543 (La.App. 3rd Cir.), writ denied, 543 So.2d 7 (La.1989).
Winn Dixie argues that the jury was clearly wrong/manifestly erroneous in finding Winn Dixie hable. We may not reverse a factual determination when the decision of the fact finder is reasonable. So long as the fact finder’s factual determination is reasonable, when the record is viewed as a whole, we may not reverse even if we believe there is a better view of the evidence. In particular, when factual determinations turn on questions of the credibility of witnesses, we may not reverse if the fact finder’s determination of credibility is reasonable when the record is viewed as a whole.
The issue to be resolved by a reviewing court is not whether the trier of fact was right or wrong, but whether the Isfactfinder’s conclusion was a reasonable one. See generally, Cosse v. Allen-Bradley Co., 601 So.2d 1349, 1351 (La.1992); Housley v. Cerise, 579 So.2d 973 (La.1991); Sistler v. Liberty Mutual Ins. Co., 558 So.2d 1106, 1112 (La.1990). Even though an appellate court may feel its own evaluations and inferences are more reasonable than the factfinder’s, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony. Rosell v. ESCO, 549 So.2d 840 (La.1989); Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). However, where documents or objective evidence so contradict the witness’s story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable factfinder would not credit the witness’s story, the court of appeal may find manifest error or clear wrongness even in a finding purportedly based upon a credibility determination. Rosell, 549 So.2d at 844-45. Nonetheless, this Court has emphasized that “the reviewing court must always keep in mind that ‘if the trial court or jury’s findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even if convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently.’ ” Housley v. Cerise, 579 So.2d 973 (La.1991) (quoting Sistler v. Liberty Mutual Ins. Co., 558 So.2d 1106, 1112 (La.1990)).
*470 This court has recognized that “[t]he reason for this well-settled principle of review is based not only upon the trial court’s better capacity to evaluate live witnesses (as compared with the appellate court’s access only to a cold record), but also upon the proper allocation of trial and appellate functions between the respective courts.” Canter v. Koehring Co., 283 So.2d 716 (La.1973). Thus, where two permissible views of the evidence exist, the factfinder’s choice between them cannot be manifestly erroneous or clearly wrong. Id.
Stobart v. State, Through Dept. of Transportation, 617 So.2d 880, 882-88 (La.1993).
Winn Dixie argues that the plaintiffs allegation that she was run over by a Winn Dixie employee, specifically a Winn Dixie Manager, was proven only by her own testimony, was not corroborated by any other witness, and was contradicted by the testimony of a Winn Dixie witness. The plaintiff testified that she was run over by a man wearing a Winn Dixie manager’s vest and she described the man. It is uncontested that Winn Dixie managers wear such vests and the Winn Dixie assistant manager who testified agreed that the plaintiffs description of the man who ran over her matched the Winn Dixie manager who was on duty in the store at that time. That Winn Dixie manager did not testify. The Winn Dixie employee who “contradicted” the plaintiff, the assistant manager, did not claim to actually have seen what happened to the plaintiff. It is obvious that the jury found the plaintiff credible and this credibility determination was reasonable.
19Winn Dixie argues that a store owner is not the insurer of customers’ safety and that a store owner only need exercise reasonable care for the safety of customers and provide reasonably safe store premises to customers. We agree with Winn Dixie as to that legal point. See Butler v. K-Mart Corp., 432 So.2d 968 (La.App. 4th Cir.1983); Phillips v. Equitable Life Assurance Co., 413 So.2d 696, 698 (La.App. 4th Cir.), writ denied, 420 So.2d 164 (La.1982). Thus, the liability issue in this case is whether Winn Dixie did exercise reasonable care for the safety of customers.
Bolden v. Winn Dixie, 513 So.2d 341 (La.App. 4th Cir.1987), a shoplifter was detained by Winn Dixie and the police were called. While waiting for the police, Winn Dixie did not take the proper steps to pre-prethe shoplifter from fleeing. The shop-shopran over the Bolden plaintiff. Winn Dixie was found liable and 100% at fault. In the present case, it was a Winn Dixie manag-managnot the shoplifter, who ran over the plain-plainThus, in the present case, the grounds for Winn Dixie’s liability are even stronger than in Bolden.
In Brock v. Winn Dixie Louisiana, Inc., 617 So.2d 1234 (La.App. 3rd Cir.1993), a Winn Dixie manager chased a shoplifter. The shoplifter, attempting to flee from the store, ran into the Brock plaintiff. Winn Dixie was held liable. Again, in the present case, in which the Winn Dixie manager (not the shoplifter) ran over the plaintiff, the grounds for Winn Dixie’s liability are even stronger than in Brock.
In the present case, the Winn Dixie manager who ran over the plaintiff was described by both the plaintiff and the assistant manager as a man about six feet tall and weighing about two hundred pounds. When he ran over the plaintiff, she was lifted off of her feet and turned over. Thus, the manager must have been running quite fast. In any event, it is obvious that a large man running through a store while chasing a shoplifter presents a substantial risk to customers. We agree that Winn Dixie has the right to act reasonably to prevent theft, see Brock, supra, but, at the same time, reasonable care must be exercised for the safety of customers. If a shoplifter is to be pursued in the store, then that must be done in a way that does not present unreasonable risk of harm to customers. See Bolden, supra. In the present case, the jury concluded that Winn Dixie did not act reasonably and did not [ ipexercise reasonable care for the safety of customers. This conclusion is not erroneous in light of Bolden and Brock.
Winn Dixie argues that the $350,000 award by the jury was excessive. The award was made as a lump sum, without separate *471 amounts for special and general damages (a point as to which Winn Dixie does not complain on appeal), so we will review the evidence as to the various items of damages to determine whether the $350,000 total is excessive.
The plaintiffs principle treating physician, an orthopaedic surgeon, Dr. Watermeir, testified at trial at length as to the plaintiffs injuries. He first saw the plaintiff on October 16,1990 at which time she gave a history of intense back and leg pain. Dr. Watermeir testified that these symptoms are common for a herniated or bulging disc impinging on a nerve. His initial diagnosis was of a pinched nerve in the neck or back as well as sprains to muscles and ligaments of the neck or back.
On October 20, 1990, Dr. Watermeir performed a thermogram that gave results that were consistent with irritation to both the L-5 and S-l nerves in the lower back.
On October 29, 1990, based upon plaintiffs job requirements of lifting and standing, Dr. Watermeir told the plaintiff she was temporarily totally disabled from her type of work.
On February 27, 1991, about six months after being run over, the plaintiff still had pain. The pain was now mostly in her left leg. A CT scan was performed which showed a disc at L-5-S1 bulging to the left side and was consistent with the plaintiffs symptoms.
In March of 1991, Dr. Watermeir told the plaintiff she should have back surgery. The surgery, a laminectomy, was performed by Dr. Watermeir in August 1991. The lami-nectomy was a “decompression” procedure, designed to reduce pressure on the nerve, by removing some bone and some of a disc.
Following the surgery, Dr. Watermeir put medical restrictions on the plaintiffs activity including no repetitive bending, stooping or lifting and no prolonged standing or sitting. The surgery did benefit the plaintiff to some extent. However, as the plaintiff continued to have pain over a number of visits for seven months after the surgery, Dr. Watermeir told her she needed a second back surgery. This would be a “fusion” which would involve removing the disc and replacing it with a bone graft.
| nSeveral more diagnostic procedures were undertaken after the first surgery. A CT scan in March 1993 showed recurrent disc herniation at the same L5-S1 site. A ther-mogram showed continued nerve impingement. A nerve block test showed that the nerve at the L5-S1 site was the cause of the pain.
Dr. Watermeir also testified that, to a reasonable medical certainty, the plaintiffs back injury was caused when she was run over in the Winn Dixie store. Additionally, he established that the plaintiffs medical bills were for necessary treatment and that the future second surgery would cost $30,000 to $35,000. Lastly, he testified that, even if the second surgery is wholly successful, the plaintiff will not be able to do any work that involves prolonged sitting or standing.
Dr. Mímeles, Winn Dixie’s expert medical witness, testified at some variance with Dr. Watermeir as to some points. However, the jury could reasonably decide to credit Dr. Watermeier’s testimony more than that of Dr. Mímeles. See Stobart, supra.
The plaintiff testified that she intended to have the second surgery. She was delaying it for a while because her son, who was in the military service overseas, would be coming home on leave and she did not-want to be laid up during his visit.
The plaintiff was examined by a vocational evaluator, Bobby S. Roberts, as to her vocational prospects in light of Dr. Watermeir’s restriction on her physical activity (as well as other factors). He determined that she would be able to perform only a minimum wage ($4.25 an hour) job and for only twenty hours a week.
The plaintiff testified that, at the time of her injury, she was employed as a tomato grader at $4.25 per hour, but that she would soon have been promoted to a tomato packer at $6.00 per hour. The plaintiffs expert witness forensic economist, Dr. Wolfson, assumed her pre-injury earning capacity to be $6.00 per hour for a 40 hour week. Against that, he contrasted her post-injury earning capacity of $4.25 per hour for a twenty hour *472 week. Assuming, based upon authoritative publications, that the plaintiff would probably work for another nineteen and one half years, he calculated her lost income as $116,-829.
Lastly, the plaintiff had past medical expenses of $22,586.
| i2Winn Dixie complains that the general damages awarded were excessive. However, assuming the jury gave some credit to the special damages testimony, it is apparent that the general damages awarded are much less than $350,000. Also, appellate review of a general damages award is quite limited. Only if the jury has abused its “vast” discretion in setting the general damage award may we reverse.
The standard for appellate review of general damage awards is difficult to express and is necessarily non-specific, and the requirement of an articulated basis for disturbing such awards gives little guidance as to what articulation suffices to justify modification of a generous or stingy award. Nevertheless the theme that emerges from Gaspard v. LeMaire, 245 La. 239,158 So.2d 149 (1963) through Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976), and through Reck [v. Stevens, 373 So.2d 498 (La.1979)] to the present case is that the discretion vested in the trier of fact is “great,” and even vast, so that an appellate court should rarely disturb an award of general damages. Reasonable persons frequently disagree about the measure of general damages in a particular case. It is only when the award is, in either direction, beyond that which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular circumstances that the appellate court should increase or reduce the award.
Youn v. Maritime Overseas Corp., 623 So.2d 1257, 1261 (La.1993). Accord Theriot v. Allstate Ins. Co., 625 So.2d 1337,1340 (La.1993). Considering the length of time the plaintiff has been in pain, and the surgery she has undergone, we do not believe the jury abused it discretion in setting the general damages award in this case.
Winn Dixie briefly states that “the plaintiff failed to lay the proper foundation for the introduction of a portion of the medical bills.” In response to this argument, we note the testimony of both the plaintiff and Dr. Wat-ermeir as to the medical bills, and see no lack of foundation for their introduction into evidence.
Winn Dixie also argues that, as to the future medical costs, the “plaintiff failed to prove conclusively that a second surgery was the most beneficial treatment.” However, Dr. Watermeir testified that the plaintiff needed the second surgery, and the plaintiff testified that she intended to have the second surgery, and the jury could reasonably accept that testimony.
| i3Lastly, Winn Dixie complains that the plaintiff’s expert witness forensic economist, Dr. Wolfson, assumed a pre-injury earning capacity of $6.00 per hour when the plaintiff actually was making only $4.25 per hour. However, the plaintiff testified that she would have been promoted to a position paying $6.00 per hour and the jury could reasonably credit that testimony.
In sum, we find that the $350,000 damage award was not excessive.
For the foregoing reasons, the judgment of the trial court is affirmed.
AFFIRMED.