|,WOODARD, Judge.
Ms. Carol E. Manning filed suit for personal injuries against Dillard Department Stores, Inc. (Dillard’s) in Alexandria, Louisiana, which occurred when a woman suspected of credit card fraud, attempted to flee the store and was pursued by the store’s employees. The fleeing woman knocked Ms. Manning into a table, causing her back injuries, and was apprehended. Her husband, Mr. Keith Manning, filed a claim for loss of consortium. The trial court rendered judgment for the defendant. The Mannings devolutively appeal the trial court’s decision. We reverse.
FACTS
On December 3, 1996, Ms. Yvette Sam-pratt entered Dillard’s in the Alexandria Mall and attempted to purchase merchandise in the junior department with a credit card that had been previously reported as stolen. When the cash register produced a code that was unknown to the clerk, she contacted her area manager, Mr. Gerald Hale.
| ¿The Phoenix National Bank contacted Dillard’s and informed them that the credit card Ms. Sampratt was attempting to use had been reported stolen. Mr. Steve Hol-labaugh, the Operations Manager for Dillard’s, called Phoenix National Bank to verify the information and then proceeded to the junior department. He also contacted Sergeant Sandra Murdock, an Alexandria Police Officer hired by Dillard’s for *270 security and to arrest/detain shoplifters, and told her to meet him at the junior department. He and Sergeant Murdock arrived at the junior department at the same time, where Ms. Sampratt was still present. Sergeant Murdock took over the investigation and asked her for identification. Ms. Sampratt did not have any but informed Sergeant Murdock that she was the daughter of the cardholder. The sergeant, then, asked her for the cardholder’s phone number and called the number provided, but no one answered. After Ms. Sampratt told Sergeant Murdock she had her parents’ permission to use the card, Mr. Hollabaugh left the junior department, returned to the customer service area, and obtained the cardholder’s phone number so that they could attempt to verify this information.
Mr. Hollabaugh brought the cardholder’s phone number to Sergeant Murdock, who was still with Ms. Sampratt in the junior department. The sergeant told Ms. Sampratt that they would have to call the cardholder to get authorization prior to her charging merchandise. Sergeant Mur-dock then made the call, and when asking for a description of their daughter, she noticed that Ms. Sampratt became “uneasy.” She non-verbally instructed Mr. Gerald Hale to move to a different area so that Ms. Sampratt would be unable to escape if she tried to run. When he moved, Ms. Sampratt started running. Sergeant Murdock dropped the phone and pursued her, followed by Mr. Hollabaugh and Mr. Hale.
Ms. Sampratt ran down an eight foot wide aisle which was somewhat crowded with Christmas shoppers. After running approximately 150 feet from the cash register into the junior department, she stumbled in the aisle and fell into Ms. Manning, who was standing by a table next to the aisle. This caused Ms. Manning to fall into the table. After Ms. Sampratt knocked into Ms. Manning, she fell to the floor where she was arrested and taken to Dillard’s Security Department.
Following the accident, Ms. Manning sought treatment for lower back pain from a chiropractor and was later examined by an orthopaedic specialist, Dr. Vanda L. Davidson. Surgery was not indicated; however, Ms. Manning maintained that her back lapain interfered with her crafts business, for which she sought damages. She and Mr. Manning filed suit to recover damages as a result of her injuries and losses caused by the December 3, 1996 accident while shopping at Dillard’s, which included those for interference with their crafts business and for their small nursery business, alleging that as a result of Ms. Manning’s injury, they were unable to fill a large order for azalea cuttings. On July 7, 1998, this matter was tried by a bench trial. : The trial court found for Dillard’s. The plaintiffs appeal.
LAW
The appellants contend that the trial court committed legal error in its determination that it was neither Dillard’s method of investigation, the detention, nor the vigilance with which the investigation was carried out that caused the December 3,1996, accident. We agree.
Applying the duty-risk analysis, the issues for this Court to decide are: (A) whether the conduct, of which Ms. Manning complains, was a cause-in-fact of the harm; (B) whether there was a duty on the part of Dillard’s to protect her against the risk involved; and (C) whether there was a breach of that duty. Cause-in-fact is purely factual and generally a “but for” inquiry. It requires the trier of facts to determine whether the petitioner’s injury would have occurred had the Dillard’s employees not engaged in the conduct in question. Brock v. Winn Dixie of La:, Inc., 617 So.2d 1234 (La.App. 3 Cir.), writ denied, 620 So.2d 848 (La.1993).
The appellant pled that Dillard’s was negligent for the following reasons:
(A) failing to implement and follow proper procedures concerning the *271 detention of an accused to insure the safety of patrons within its store;
(B) failing to warn the plaintiff of the altercation prior to the incident;
(C) by instituting a dangerous and an improper pursuit of Ms. Sampratt, which ultimately resulted in the accident at bar.
The trial court found that Dillard’s was not negligent in failing to implement and follow proper procedures concerning detention of a suspected thief to insure the safety of store patrons nor was it negligent in its failure to warn Ms. Manning of an impending confrontation.
|4The store policy concerning external theft was: (A) never openly accuse the suspect; (B) contact security or call the police; and (C) follow the instructions of the police. Although, we agree that the agents and employees of Dillard’s complied with this policy, we find that these procedures and Dillard’s employees’ conduct were not sufficient to satisfy the jurisprudential requirements of Brock, 617 So.2d at 1237, where we stated:
A store owner’s right to detain shoplifters and protect inventory must be balanced against the duty it owes to patrons to take reasonable steps to guard their safety, which may in certain instances include the harm occasioned by ñeeing shoplifters. Bolden v. Winn Dixie, 518 So.2d 341 (La.App. 4th Cir.1987), writ denied, 514 So.2d 1177 (La.1987). When store owners undertake to exercise their “police-like” authority to detain shoplifters, they must do so with reasonable caution to avoid placing patrons in foreseeable danger.
(Emphasis added). The record reveals that Dillard’s employees did nothing to safeguard the safety of their patrons, even though they knew that there was a high probability that the person they were about to confront was a thief, as the card had been reported stolen — not lost. While there is no guarantee that this suspect would not have attempted to run at any time during the investigation process, it is more likely than not that her running and injuring Ms. Manning would have been prevented had Dillard’s taken some simple precautions. For example, once the employees had received the report from the bank that the card had been stolen, they could have called the cardholder for verification in the customer service location, instead of in the suspect’s presence. Further, after the employees had determined that no one had permission to use the card, they could have taken measures to either remove the thief from the area or to protect patrons in the immediate area. Finally, once the card was reported as stolen, and particularly if the cardholder verified that no one had permission to use it, there was probable cause to detain and remove Ms. Sampratt from the area for questioning. Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); La.Code Crim.P. art. 215.1(A). Calling the cardholder in the presence of this suspected thief made it more likely that she would run, as she knew that she was about to be caught, and it is that knowledge that caused her to bolt. “The risk of injury in this case was not only reasonably foreseeable; but substantially likely to occur in this instance....” Brock, 617 So.2d at 1238. The conduct of Dillard’s employees in the investigation of this situation was a cause-in-fact of Ms. Manning’s injury.
Relying upon Martin v. Piggly Wiggly Corp., 469 So.2d 1057 (La.App. 2 Cir.1985), Dillard’s argues that once it called Sergeant Murdock to investigate this suspected credit card fraud, it was absolved of its duty to exercise reasonable care to protect its patrons from an unreasonable risk of harm. Martin cited Rodriguez v. New Orleans Public Service, Inc., 400 So.2d 884 (La.1981). There are several reasons why we decline to follow Martin and Rodriguez. First, in Martin, the police, who were summoned to apprehend a suspected shoplifter, were not employees of the store, as we have in this case. *272 Sergeant Murdock was employed for the express purpose of carrying out Dillard’s duty to protect its patrons from an unreasonable risk of harm. Thus, Martin is distinguishable from this situation. Second, that portion of the Rodriguez case cited in Martin and relied upon by Dillard’s was simply dicta. Furthermore, Rodriguez involved a third party’s assault upon a passenger of a common carrier which did not employ off-duty policemen on the buses to prevent passengers from being attacked. Third, projecting Dillard’s argument to its logical conclusion, Dillard’s would never have any duty to protect its patrons so long as it employed off-duty policemen to patrol its store. As a matter of public policy, we do not believe that it serves the public good for store owners to be so easily absolved of their duty to protect the public from unreasonable risks of harm.
We hold that Dillard’s is liable to Ms. Manning for her injuries.
Damages
As a result of the collision with Ms. Sampratt, Ms. Manning suffered a low back injury and pain for the first time in her life. This evidence was not rebutted. This accident caused her to undergo chiropractic manipulation through May of 1997. Because of her back pain, she also sought the treatment of an orthopedic specialist, Dr. Vanda Davidson. Dr. Davidson performed an MRI, which revealed an abnormal finding at the L5-S1 level. He related it to the December 3, 1996 accident. Dr. Davidson did not feel that surgery was necessary and opined that her condition would cause her some pain into the future. He assigned Ms. Manning a five percent whole body disability.
I fiIn view of Ms. Manning’s injuries, we award her the sum of $20,000.00 in general damages. This amount is comparable to amounts which we have approved for similar types of back injuries in the past. See Naquin v. Teer, 94-448 (La.App. 3 Cir. 12/7/94); 649 So.2d 993 (total damage award $19,999.99); Devall v. Begnaud, 617 So.2d 1286 (La.App. 3 Cir.1993) (general damage award $20,000.00). The medical specials were stipulated to be $4, 534.11, which we grant.
Ms. Manning claimed additional damages caused by her inability to work. For many years she made crafts which she would sell at festivals and craft shows. Because of her accident, she was unable to sit for more than one hour and has been unable to sell her crafts. She estimated her loss at $1,000.00. We award that amount.
More problematic is the appellants’ claim for loss of profits of $12,000.00 from their small nursery which they operate. Mr. Manning contends that his wife’s back condition prevented them from honoring a contract with another nursery to provide 48,000 azalea cuttings at twenty-five cents per cutting. He alleges that the sale would have resulted in earnings of $12,-000.00. However, he testified that this sale was contingent upon their cuttings meeting the buyer’s specifications. Given this uncertainty, the record is not sufficient to establish that, more probably than not, Mr. Manning would have made the sale, but for Mrs. Manning’s injury. Even assuming that we were able to find that the azalea contract was binding and without a contingency, Mr. Manning testified that it would have taken two to three months to complete this order by himself without the help of his wife. As the accident occurred in December and the order was due in March of the following year, Mr. Manning had the ample time to complete the order without the help of his wife. Accordingly, we cannot say that her injury caused the loss.
Finally since the question of Mr. Manning’s claim for loss of consortium was not briefed, we cannot address this issue.
CONCLUSION
The trial court’s decision that Dillard’s employees’ conduct was not the eause-in-fact of Ms. Manning’s injuries is reversed. *273 Judgment is rendered in favor of Ms. Manning in the amount of $20,000.00 in general damages, $4,534.11 in medical expenses, and $1,000.00 in lost income. Dillard’s is cast with the costs of this appeal.
REVERSED AND RENDERED.